## WALTER S. COX vs. ALLEN MANVEL.

(Argued Jan. 22, 1894.   Reversed Jan. 30, 1894.)

No. 8525.

**Former decision adhered to.**

Opinion on former appeal (50 Minn. 87) adhered to.

**Powers of a statutory guardian.**

A statutory guardian is subject to the direction and control of the court in the management and disposition of his ward's property, and any disposition of it in violation of the order of the court is unauthorized, although, in the absence of any order on the subject, the guardian would have authority to make such disposition.

**Allowing a guardian's account, will not confirm an unauthorized sale.**

If a guardian disposes of his ward's property in violation of the direction of the court, the mere fact that the court subsequently allowed the account of the guardian, in which he charged himself with the proceeds of the sale, it not appearing that the court knew that the guardian had disobeyed its orders or the source from which the money charged in the account was derived, cannot be construed as amounting to a confirmation of the unauthorized act of the guardian.

Appeal by plaintiff, Walter S. Cox, from a judgment of the District Court of Clay County, *Frank Ives*, J., entered September 1, 1893, that he had no right, title or interest in the real estate in controversy.

This action was brought in August, 1889, to determine adverse claims to lots three (3) and four (4) of section thirty (30), T. 137, R.

45, at Barnesville. The Commissioner of the U. S. General Land Office on June 8, 1881, issued to the plaintiff, Walter S. Cox, then a minor twelve years old, a certificate that he as sole heir of a deceased soldier was entitled to an additional homestead entry of eighty acres of the public land under U. S. Rev. Stat., § 2306. The county court of Johnson County, Nebraska, where he resided, appointed his mother, who had remarried, his guardian and authorized her to appoint some person to select, locate and enter such additional land, and further authorized her to sell the land when located and to appoint an attorney to make the sale. She as such guardian sold the son's right for $100 and signed a power of attorney to enter, sell and convey the land and receive the price. She so sold to a stranger and the script was put upon the market and sold to Robert Miller for $250. The name of the attorney was not inserted in the instrument, but was left blank. Defendant, Allen Manvel, bought of Robert Miller at Fergus Falls this right, paid him $430 therefor and caused his own name to be inserted in the blank in the power of attorney and entered the land in dispute, in the son's name and as such attorney of the guardian conveyed it on November 8, 1882, to Christopher O. Wheeler who on April 8, 1889, conveyed it to defendant. The guardian of the boy filed her final account in the Johnson County court showing the receipt of the $100 and that she had expended it for his benefit. The account was approved by the court July 13, 1889, and she was discharged from her office as guardian. At the first trial the court made findings and ordered judgment for the defendant. Plaintiff moved for a new trial. Being denied he appealed and the order was reversed. *Cox* v. *Manvel,* 50 Minn. 87. The issues were retried in January, 1893. Findings were made and judgment again ordered for defendant. It was entered and plaintiff appeals therefrom.

*Haynes & Chase* and *C. J. Cahaley,* for appellant.

The guardian had no authority to sell the right of the minor as personalty. The order of the county court expressly prohibited the sale of the right as personalty. The power of attorney as an instrument to divest the infant of his title to real estate is equally void. *Dexter* v. *Hall,* 15 Wall. 9; *Whitney* v. *Dutch,* 14 Mass. 457; *Pyle* v. *Cravens,* 4 Litt. 17; *Lawrence* v. *McArter,* 10 Ohio, 37; *Trueblood*

v. *Trueblood,* 8 Ind. 195; *Armitage* v. *Widoe,* 36 Mich. 124; *Doe* v. *Roberts,* 16 M. & W. 778.

As a matter of law the only part of the order of the Probate Court of Johnson County that can have any force or effect in this state is that part of it that directs the location of the certificate by some agent chosen by the guardian, for the benefit of the ward. The moment the land was entered in this state, that court had no power or jurisdiction to direct the mode of its disposal or transfer. *Watkins* v. *Holman,* 16 Pet. 25; *Washburn* v. *Van Steenwyk,* 32 Minn. 336; *Jordan* v. *Secombe,* 33 Minn. 220.

Material alterations of the power were made after its execution, without either verbal or written consent to make them. All blanks were filled in and upon its face it appeared to be a completed instrument. The only ground upon which such altered instruments have ever been sustained has been upon the doctrine of estoppel *in pais.* *Pence* v. *Arbuckle,* 22 Minn. 417.

The guardian could not delegate the authority she received from the county court. *Cox* v. *Manvel,* 50 Minn. 87.

The legal title was vested in Cox by Manvel and there can be no resulting trust. 1878 G. S. ch. 43, § 7; *Sumner* v. *Sawtelle,* 8 Minn. 308; *Wentworth* v. *Wentworth,* 2 Minn. 277; *Johnson* v. *Johnson,* 16 Minn. 512; *Week* v. *Bosworth,* 61 Wis. 78; *Callanan* v. *Judd,* 23 Wis. 343; *Warren* v. *Van Brunt,* 19 Wall. 646; *Bausman* v. *Kelley,* 38 Minn. 197.

The guardian's account showing the receipt of $100 is not evidence of either a sale or a ratification of a sale of the land. It is elementary law that an infant need not return money expended by him during his infancy in order to recover back his property. *Shillock* v. *Gilbert,* 23 Minn. 386; *Miller* v. *Smith,* 26 Minn. 248.

*M. D. Grover,* for respondent.

The right to enter and locate as evidenced by the certificate or script was a valuable right by which the estate of the minor was enlarged. It was a mere right of selecting and taking. It was not attached to any particular tract or land. It was the subject of sale. *Mullen* v. *Wine,* 26 Fed. R. 206; *Webster* v. *Luther,* 50 Minn. 77.

It will be presumed that the guardian, and the party purchasing

from her, knew that under the rules and practice of the U. S. Land Department the application to enter the land must be made in the name of, and the patent issued to, the beneficiary named in the certificate. The guardian must be held to have intended, in executing the blank power of attorney, to invest the purchaser with necessary authority and power to locate, and after patent was issued to convey the land.

Equity looks to the intent rather than to the form, and regards that as done which was agreed to be done. Had the power of attorney to sell been properly executed so as to become operative, nothing further would have been required and the title to the land embraced in the patent would have passed to Manvel. The guardian became bound under the sale of the certificate, to take such steps and execute such papers as might become necessary in order to transfer to the purchaser of the certificate the title to the land when located under it. *Maddox* v. *Rowe*, 23 Ga. 431; *Jones* v. *Baird*, 4 Jones, Eq. 167; *Hill* v *Cooper*, 6 Oregon, 181; *Tiernan* v. *Poor*, 1 Gill. & J. 216; *Munds* v. *Cassidey*, 98 N. C. 558; *Mastin* v. *Halley*, 61 Mo. 196; Pomeroy, Eq. J. §§ 368, 369, 373; *Thompson* v. *Myrick*, 20 Minn. 184.

This is not a case where a grant for a valuable consideration was made to one person, and the consideration paid by another. It is a case where the guardian having a valuable property right of the ward, sold it for value. This right was one of selection, and from its nature required, in view of the rules and practice of the U. S. Land Department, the execution of other papers in order to transfer the legal title to the land when selected, to the purchaser of the right. It was necessary that the transaction should be carried on in the name of the beneficiary named in the certificate. If the certificate was a subject of sale, the sale of it carried with it the obligation and duty of taking all necessary steps and executing all necessary papers to invest the purchaser with the thing, which in the minds of the parties, he purchased; that is the land when located. *Nixon's Appeal*, 63 Pa. St. 279; *Barnet* v. *Dougherty*, 32 Pa. St. 371.

No order of the court was necessary to authorize sale of the certificate. A guardian can dispose of the personal estate of his ward to a *bona fide* purchaser without first obtaining license therefor.

He may sell the personal estate without a previous order of the court. A sale having been made and the proceeds of the sale applied to the use of the ward, the amount received having been reported to the court and accounted for by the guardian, and the account having been approved and the guardian discharged, the order discharging the guardian will be regarded as a ratification of the sale.

MITCHELL, J. The learned counsel has made, as he always does, all out of his case that there is in it.

But after careful examination we are unable to see that the legal *status* of the case is at all different from what it was when here on the former appeal. 50 Minn. 87, (52 N. W. 273.)

The only facts established on the last trial, not established on the first, that are claimed to be material are—*First*, that under the laws of Nebraska a guardian of a minor has authority to sell the personal property of his ward without any order of court authorizing the sale; and, *second*, that after this land was entered, but while the plaintiff was still a minor, the guardian made her final account to the court, which was confirmed, and she discharged from her guardianship; and that in the amount with which she charged herself in her account was included the $100 which she received from the person to whom she delivered the certificate of the minor's right to enter an additional homestead, the two blank powers of attorney, and the order of the court.

It is claimed that the effect of the first of these facts was to prove a sale of the right of entry as personal property.

But, as was said on the former appeal, "if we are to treat the right to enter the additional lands as personal property, and the transaction as an attempt by the guardian to assign it as personal property, then we confront the order of the county judge who appointed the guardian, and who must be assumed to have had the direction and control of her in the discharge of her duties as guardian, which in effect prohibited her assigning the right, or doing anything with it except causing the land to be selected and located under it, and then to be sold."

Conceding that the guardian might, in the absence of any order of court on the subject, have sold the right as personal property, yet the minor is the ward of the court, and, in the management and

disposition of his person and property, the guardian, who is but the officer of the court, may always be regulated and controlled by it; and, as this order of the court accompanied the certificate in every successive delivery down to the party who entered the land, the defendant cannot even claim the benefit of ignorance of its contents.

And right here lies the vice in the argument of counsel. It all proceeds upon the assumption that there had been a valid sale by the guardian of the right of entry as personal property. If this were so, there might be some chance to apply the equitable doctrines which he invokes, but, with this wanting, it seems to us that his whole argument falls.

The effect claimed for the second fact is that it amounted to a confirmation or ratification by the court of the act of the guardian in selling the right of entry, instead of causing the entry to be made in the name of the minor, as directed in the original order. But the foundation is too small for the superstructure. There is not a particle of evidence that the court knew that the guardian had disobeyed the order, or even knew the source whence the money came with which the guardian charged herself in her account.

There are some features of the case which might incline a court to view the defendant's position as favorably as the rules of law would permit, but we do not see any legal principles upon which the decision of the trial court can be affirmed.

Judgment reversed.

COLLINS, J., absent, took no part.

(Opinion published 57 N. W. Rep. 1062.)