STATE EX REL. P. A. HILBERT AND OTHERS AS THE STATE BOARD OF CONTROL v. PROBATE COURT OF MAHNOMEN COUNTY.[1]

July 22, 1921.

No. 22,322.

**Dependent and neglected child — when juvenile court may end guardianship of board.**

Chapter 397, Laws 1917, is construed to give the juvenile court, committing a dependent or neglected child to the guardianship of the state board of control, the power to terminate such guardianship, at any time before the child is legally adopted, when the parent proves to the sat-

[1]Reported in 184 N. W. 27.

isfaction of the court that he or she is able and willing to properly support, care for and educate the child.

Upon the relation of P. A. Hilbert and others the district court for Mahnomen county granted its writ of certiorari directed to the probate court for that county, to review the action of that court, Reck, J., in awarding the custody of minor children to their mother and terminating the guardianship of the state board of control. From an order, Grindeland, J., discharging the writ, the state appealed. Affirmed.

*Clifford L. Hilton,* Attorney General, and *Egbert S. Oakley,* Deputy Attorney General, for appellant.

*Johnston & Carman,* for Mrs. Davidson, formerly Mrs. Dodge.

HOLT, J.

Pursuant to chapter 397, p. 561, Laws 1917, George and Catherine Dodge, dependent children 12 and 13 years old, respectively, were placed under the guardianship of the state board of control by the probate court of Mahnomen county, sitting as the juvenile court of that county. More than a year thereafter, the mother of the children petitioned that court to set aside the decree, on the ground that notice of hearing had not been served upon her so as to afford her an opportunity to be present thereat, and that her circumstances had so altered that she could now properly support and care for the children. The court ordered the children discharged from the guardianship of the board of control. The latter sought a review of the order on certiorari from the district court. The writ was discharged and relator appeals.

We shall not consider whether, upon the service made, the juvenile court had jurisdiction to deprive the mother of her children forever, for we have reached the conclusion that the appeal may be disposed of by an answer to this question: May the state board of control's guardianship of dependent and neglected children be terminated by the juvenile court during their minority, there being no claim of improper treatment while under the board's control?

Appellant contends that Armstrong v. Board of Control of State Public School, 88 Minn. 382, 93 N. W. 3, is decisive of the question. There, in construing the effect of a guardianship of children, commit-

ted to the state school at Owatonna under chapter 210, p. 386, Laws 1897, it was said: "Whether one committed to the care and custody of the school should be released prior to arriving at its majority is a matter resting in the sound discretion of the school board,—a department of the executive branch of the government,—with the exercise of which the courts have no jurisdiction to interfere or intermeddle in any way." No other conclusion could have been reached under that statute which provided that when the court entered the order committing the child to the school the parents "shall thereafter have no rights over or to the * * * earnings of said child, except in such cases as said board may, as herein provided, restore the child to its parents." (Section 6). The board of that school was made the legal guardian of all children committed to the school, "which guardianship shall be continued during the minority of such children, except in the cases in which, under this act, the guardianship may be canceled by resolution adopted by said board." (Section 8). Exclusive right was given the board in all cases to release the child before majority, except where there had been a legal adoption which worked a release. (Section 12). "Whenever any ward of said school, who is not indentured as herein provided, has become self-supporting, the said board may, at its discretion, so declare the fact by resolution, and thereupon said guardianship shall cease, and the child shall thereafter be entitled to its own earnings. Whenever one or both of the parents of any ward of said board, who is not indentured, have become able to support the child and educate it, the child may, by resolution adopted by said board, be restored to its parents." (Section 10).

But, we think, a different policy was adopted with the advent of the juvenile courts. In chapter 285, p. 418, Laws 1905, such courts, in counties of over 50,000 inhabitants, were given exclusive jurisdiction of dependent, neglected and delinquent children. The state board of control had only supervisory duties over the institutions which the court might appoint to guardianship of such children. (Section 11). That the court committing the child still retained jurisdiction to change or terminate the guardianship, is evident from the fact that, if an adoption proceeding was begun in another court than the court which appointed the guardian, 30 days' notice must be given the latter court (section 8); no power of discharge was vested in the board of control; the board of

any institution appointed guardian might parole and recommend a discharge, but the court must act thereon (section 9); and the court might at any time proceed to inquire into the ability of the parents to support the child and "enter such order or decree as shall be according to equity in the premises." (Section 10).

A similar act, chapter 232, p. 269, Laws 1909, gave jurisdiction to probate courts, in counties of less than 50,000 inhabitants, over dependent, neglected and delinquent children. By section 8 thereof any parent of a child put under guardianship may, after the expiration of one year of such guardianship, apply to the probate court which created the same to terminate it:" "And if it appears by clear and convincing evidence that the causes which produced or contributed to the dependency, neglect, or delinquency of such child no longer exist, the child, unless previously adopted, shall be restored to its parents." The authority of the state board of control was retained as visitorial merely over guardians appointed. (Section 10). No change in these respects was made by the amendments of the act as found in chapter 260, p. 356, Laws 1913.

The laws relating to juvenile courts and their jurisdiction over dependent, neglected and delinquent children were codified into chapter 397, p. 561, Laws 1917, embracing in one act both probate and district courts sitting as juvenile courts. This last act manifests no intention to make any substantial change in the then existing law. Insofar as this act gives the court authority to appoint the board of control a guardian, the board occupies the same position as any institution or individual appointed. We fail to find any intimation that to it, or to any guardian, is reserved the right to determine when the guardianship shall end, except as it may be done by consenting to an adoption. By express terms the court retains authority to discharge a delinquent child placed under guardianship. (Section 13). And a delinquent child may be committed by the court to "an association that will receive it, embracing in its objects the care of dependent or neglected children." (Section 13). If such child be committed to the state training school, it may not be discharged within one year after the commitment without the approval of the court. (Section 13). It therefore seems that the court loses control to no appointed guardian. And we think the whole scheme of the legislation with reference to dependent, neglected and delinquent children is to

commit them to the jurisdiction of the juvenile courts until they are legally adopted, and that the authority and power of such courts over their wards are always supreme to that of the guardian to whose custody they have been committed by those courts. That such supreme authority is so vested is indicated by the fact that an adoption may not be had, even with the consent of the guardian, unless made by the court appointing the guardian, or upon 30 days' notice to that court of the hearing, if the adoption proceeding is in any other court.

The relator also calls to its aid chapter 194, p. 279, Laws 1917, approved 10 days prior to the approval of chapter 397. This law imposes additional duties upon the board of control in looking after the welfare of defective, illegitimate, dependent, neglected and delinquent children. True, section 1 thereof provides: "The state board of control shall have powers of legal guardianship over the persons of all children who may be committed by courts of competent jurisdiction to the care of the board, or to institutions under its management. After commitment to its guardianship the board may make such provision for and disposition of such child as necessity and the best interests of the child may from time to time require," with the exceptions that no child placed under the guardianship for delinquency may be adopted, nor may a child be put in an institution for delinquents without having been first adjudged delinquent by the court. That this act was not intended to place the board of control above the juvenile courts is indicated by section 3, making it the duty of the board to co-operate with such courts to promote the enforcement of all laws for the welfare of the children referred to in the act. This act contains no provision that carries a suggestion of an intention to shift the power conferred by said chapter 397 upon juvenile courts from such courts to the guardian appointed by them.

Laws which permit the severance of the tie that binds a parent to a child recognize the sacredness of that tie and extend the hope of reunion. Delinquent children, though committed to guardianship, cannot be permanently separated from their parents without the latters' consent. We cannot think parents of dependent or neglected children ought to occupy a worse position, so long as the child has not by legal adoption acquired other parents. Chapter 210, p. 386, Laws 1897, as already

noted, expressly conferred on the board of control of the state school the authority to restore such a child. And it is to be presumed that such authority exists either in the courts or the guardian under chapter 397, p. 561, Laws 1917. We think it is vested in the courts. In the case of a dependent child, section 11 provides that he shall not be taken from his parents without their consent, that is, committed by the court, unless, after diligent effort to avoid separation, the same shall be found needful in order to prevent serious detriment to the child. That the law aims at giving the child what the natural parents are most likely to render to the best advantage is plain from this provision: "That whenever it is necessary to provide for him (the child) elsewhere than with his parents his care, custody, and discipline shall approximate as nearly as may be that which ought to be given by his parents; and that in all cases where it can be properly done he shall be placed in an approved family home and become a member by legal adoption or otherwise." (Section 32). We gather from this that, until a child committed by a juvenile court has acquired other parents by legal adoption, the policy of the law is to hold out the hope to the natural parents that they may again have the child, upon proving to the court that conditions have so changed that they can and will properly rear and care for the child. That the court which placed the child under guardianship is the proper authority to determine when it should cease, would seem the most natural inference, unless there be some provision to the contrary in the law itself. We find none in chapter 397. On the contrary, there are indications that the committing court retains continued supervision over the child and its property superior to that of the guardian. If such child has property, and any more than the income is necessary for his education, the court, and not the guardian, determines whether any part of the principal may be used for the purpose. (Section 25).

As the law now stands the jurisdiction of juvenile courts over dependent, neglected and delinquent children, and the relation of such courts to the guardians to whose custody such children are committed, are so similar to the jurisdiction conferred upon and exercised by the probate courts in appointing, controlling and changing or removing guardians of minors and insane persons, that we may say that the same rules and

principles should govern. It is settled that a guardian appointed by the probate court is an officer of the court—the agent through whom the court extends the care and protection the ward needs. The guardian's conduct may always be regulated and controlled by the court appointing him. Cox v. Manvel, 56 Minn. 358, 57 N. W. 1062. Such being the case, it would seem to follow that the court has also the power to remove or free the ward from the guardian.

This construction of the juvenile court statute appeals to us not only as the one intended by the legislature, but as the one most likely to achieve the beneficent purpose sought. The court that originally takes jurisdiction of a dependent, neglected or delinquent child hears and determines his status on evidence. If any change develops after the adjudication which ought to restore the child to his parents, the court hears and determines that with knowledge of what the former trial showed. The state board of control, with its varied and multitudinous duties, is not in position to give the time necessary to personally hear and determine on the merits applications for restoration of parental rights, but would likely have to rely on the judgment of agents and subordinates. This would not be a desirable expedient in a matter of such importance both to the child and the parents. We conclude that the court, and not the board of control, has the final word on the question of restoration of a dependent or neglected child to the parents. Of course the law contemplates that a legal adoption takes the child out of the control of the juvenile court.

We add that there is no intimation in the record that relator has been remiss in its duties in any respect to the children in question. Nor did relator attempt to controvert the mother's claim that she is now fit, able and willing to properly support, care for and educate her children.

Order affirmed.