# STATE EX REL. ROSA GRAVELLE v. ROBERT V. RENSCH.[1]

January 27, 1950.

No. 35,160.

*Forrest T. Anderson,* for relator.
*Charles W. Sterling,* for Robert F. Nase.

KNUTSON, JUSTICE.

This is an original proceeding for a writ of prohibition to restrain one of the judges of the district court of the second judicial district

---

[1]Reported in 40 N. W. (2d) 881.

from proceeding to determine the right to custody of minor children upon an order to show cause issued in an original divorce proceeding. The pertinent facts as they can be gathered from the supporting petition and other records are as follows:

Some years ago, the exact date of which does not appear from the record before us, Dorothy M. Nase was granted a divorce by the district court of Ramsey county from her husband, Robert F. Nase. Custody of the two minor children of the parties, Robert William Nase and Thomas Joel Nase, was given to their mother, Dorothy. Thereafter, the children resided with their mother at the home of their maternal grandparents in St. Paul until the death of Dorothy on February 17, 1947. After the death of their mother, the children continued to reside with their maternal grandparents, William Presler and Clara Presler, until the latter part of 1947 or the early part of 1948, the exact date of which does not appear from the record. The grandparents then attempted to adopt the children. The father, Robert F. Nase, appeared in opposition to the petition for adoption. The district court of Ramsey county denied the petition for adoption and made an order awarding custody of the children to the father, which order is dated January 10, 1948. Shortly thereafter, the father took the children to the home of his sister, Rosa Gravelle, relator herein, who resides in Itasca county, where the children have since remained. The father resided at the home of his sister for a time, taking what odd jobs he could find in and around Itasca county. Trouble developed between Robert and his sister, and he later returned to St. Paul to make his home. On September 16, 1949, on petition of relator, the probate court of Itasca county appointed relator guardian of the persons of the minor children involved, and on October 21, 1949, letters of guardianship over the persons of the two minors were issued to her. The father appeared in court at the hearing on the petition for guardianship, together with his attorney. No determination was made that he was unfit to have the children. As shown by the court's order, the reason for the guardianship was:

"That the father is not so situated that he can personally give the proper care to the children and that there is no evidence produced showing that the father had made any other satisfactory arrangements for their care and custody and that it is necessary that the children at least have some semi-permanent home in order that they may have proper care and their education properly supervised."

On November 18, 1949, on petition of Robert F. Nase, the father, respondent, a judge of the district court of Ramsey county, issued an order to show cause in the original divorce action between Dorothy M. Nase and Robert F. Nase, directed to relator, requiring her to appear on December 2, 1949, in the courthouse in Ramsey county and show cause why the children should not be delivered to their father, Robert F. Nase. On application of relator, this court issued an alternative writ of prohibition, returnable December 29, 1949, restraining respondent from taking any further action on the order to show cause and requiring him to show cause why the writ should not be made permanent.

The petition of relator raises these questions:

(1) Does the appointment of a guardian of the person of a minor child divest the district court of jurisdiction over the custody of such minor child?

(2) Does the district court of Ramsey county have jurisdiction to determine the right to custody of the children in the original divorce action, as between the father of the minors and the guardian of their persons, after the death of the mother, to whom custody was originally granted?

It is the contention of relator that when the probate court appointed a guardian over the persons of the minors the district court had no further jurisdiction over their custody and that the present proceeding is a collateral attack upon the order of the probate court. With these contentions we cannot agree. Our present statute, M. S. A. 525.56, prescribing a guardian's duties, states:

"* * * A general guardian of the person *shall have charge of the person of the ward.*" (Italics supplied.)

Prior to the adoption of our present probate code in 1935, our statutes expressly recognized the right of a parent, as natural guardian, to the custody of minor children. Mason St. 1927, § 8933, reads as follows:

"The guardian of a minor shall have the custody of his ward and charge of his education, and the care and management of his estate, unless otherwise specified in his appointment. Unless sooner discharged according to law, he shall continue as such guardian until the minor arrives at full age. But the father and mother are the natural guardians of their minor children, and, being themselves competent to transact their own business and not otherwise unsuitable, they are equally entitled to their custody and the care of their education. If either dies or is disqualified to act, the guardianship devolves upon the other."

Prior to the adoption of the new code, we held on numerous occasions that the right of a parent to custody is not absolute, but must yield in those cases where it would best serve the welfare of the minor to grant custody to someone other than the parent. State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N. W. 927. We have so held since the adoption of our new probate code, State ex rel. Olson v. Sorenson, 208 Minn. 226, 293 N. W. 241, and that is almost the universal rule. The right of a statutory guardian to custody over a minor should be no more absolute than the right of a parent as natural guardian.

From early times it has been the rule that the appointment of a guardian over the person of a minor does not divest the district court of jurisdiction in a proper proceeding brought to determine who shall have custody of the minor. This rule was stated in Wilcox v. Wilcox, 14 N. Y. 575, 578, as early as 1856, as follows:

"* * * Although the grandfather procured himself to be appointed, by the surrogate, the guardian of the person and estate of the child, that does not interfere with the power of the court of

chancery to control its custody. The father is the natural and legal guardian of the child; still, the court will, in a proper case, interfere even with his control. The motive to the exercise of this power is the benefit of the child, and is not to be defeated by one having a mere legal title to the custody of the child, any more than it would be defeated if the legal guardian should abuse his trust. The court of chancery acted as the guardian of all infants; this was one of its most sacred, and most worthy and most important duties. Whatever might have been the origin of this power in England, it passed to and was exercised by our court of chancery, without any dispute as to its jurisdiction."

In Thompson v. Doyal (Tex. Civ. App.) 209 S. W. (2d) 425, the mother of two minor children was granted custody in a divorce proceeding. She later remarried, and her new husband adopted the children. About a year and a half later, both the mother and her then husband were killed in an automobile accident. The maternal grandfather of the children thereafter had himself appointed by the probate court guardian of the persons and estates of the minors. The Texas court said (209 S. W. [2d] 426):

"The guardianship proceedings constitute no impediment to the exercise by the District Court of its equity powers in suits involving the custody of minors."

See, State ex rel. Evangelical L. K. Society v. White, 123 Minn. 508, 144 N. W. 157.

The great weight of authority is that where custody of a minor child is granted to one parent by a divorce decree, and such parent dies, the right of custody automatically inures to the surviving parent, absent a showing that he is unfit. We recently so held in Kienlen v. Kienlen, 227 Minn. 137, 34 N. W. (2d) 351.

The appointment of a guardian does not *ipso facto* divest the parent of the right to custody. Smidt v. Benenga, 140 Iowa 399, 118 N. W. 439. In Brooke v. Logan, 112 Ind. 183, 185, 13 N. E. 669, 670, 2 A. S. R. 177, the Indiana court said:

"The appointment of appellee as guardian of the person and estate of the child did not, of itself, deprive appellant, as the father, of her custody. Section 2518, R. S. 1881, is as follows: 'Every guardian so appointed shall have the custody and tuition of such minor, and the management of such minor's estate during minority, unless sooner removed or discharged from such trust: *Provided,* That the father of such minor (or if there be no father, the mother, if suitable persons respectively) shall have the custody of the person and the control of the education of such minor.' If the father is a suitable person, he has a right to the custody of his infant child as against the statutory guardian."

The general rules are to be found in 25 Am. Jur., Guardian and Ward, § 63; 39 C. J. S., Guardian and Ward, § 57; Annotation, 63 A. L. R. 1147.

In determining who shall have custody as between a parent and a guardian, the controlling consideration, as in other cases, is the welfare of the child.

While the precise question presented here seems to be one of first impression in this state, we assume it is so because it has never been thought that appointment of a guardian would divest the district court of jurisdiction to determine the right to custody of minor children in an appropriate proceeding.

Next, relator contends that the court has no jurisdiction to determine the right of the father to custody by an order to show cause in the original divorce proceeding.

The general and prevailing rule followed by most courts is that upon the death of one of the parties divorced by a judicial decree the divorce proceeding falls so far as concerns any further right to the custody of the children. Leclerc v. Leclerc, 85 N. H. 121, 155 A. 249, 74 A. L. R. 1348; State ex rel. Walker v. Crouse (Mo. App.) 205 S. W. (2d) 749; Girtman v. Girtman, 191 Ga. 173, 11 S. E. (2d) 782; Tanner v. Tanner, 78 Ohio App. 178, 62 N. E. (2d) 654; Annotation, 74 A. L. R. 1357. We have already pointed out that where custody is granted by a divorce decree to one parent, who dies, the right to custody automatically inures to the surviving parent.

The divorce jurisdiction of district courts is purely statutory, and the court has only those powers delegated to it by the statute. Kienlen v. Kienlen, 227 Minn. 137, 34 N. W. (2d) 351, *supra*. In that case, we held that the divorce decree could be amended only upon the petition of a parent. In the case at bar, no amendment of the divorce decree is required. Upon the death of the mother, the right to custody automatically inured to the father. In addition, the district court in the abortive adoption proceedings expressly granted custody to the father. The question raised here is not who is entitled to custody, the father or the guardian, but, rather, may the right to custody be determined by an order to show cause in the original divorce proceeding? Where the right to proceed in the action has terminated by the death of one of the parties, it seems clear that an order to show cause in the divorce action is not the proper method of proceeding to test the right to custody of the minor children.

We therefore hold that the court has no jurisdiction to determine the right to custody by an order to show cause issued in the original divorce action. We express no opinion as to who would be entitled to custody if the matter is brought before the court in a proper proceeding. The paramount consideration in such case is the welfare of the children, having in mind the general rule that a parent has the first right to custody unless he is unfit or, for some other reason, the welfare of the child will be best served by granting custody to some other person.

The writ of prohibition is made absolute. Proceedings heretofore had on the order to show cause are annulled. No costs or disbursements are allowed to any party.