In re WELFARE OF A. R. W. and Y. W. C.

No. 47812.

Supreme Court of Minnesota.

June 2, 1978.

Rehearing Denied Aug. 3, 1978.

---

J. Bruce Hiller, Jack S. Nordby, St. Paul, for appellant.

Michael H. Burns, Legal Aid Society, Minneapolis, for Darlene Prokulewicz.

Gary Flakne, County Atty., Toni A. Beitz, Asst. County Atty., Minneapolis, for Hennepin County Welfare Dept.

Heard before TODD, SCOTT, and GODFREY, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This is an appeal from an order of the juvenile court division, Hennepin County District Court, making absolute a writ of habeas corpus. By order of June 10, 1977, this court granted a petition for discretionary review and stayed execution of the juvenile court's order directing the return

of Y.W.C., a minor, to the custody of his natural mother, Darlene Prokulewicz. We affirm the decision of the juvenile court and vacate the stay of execution.

Darlene Prokulewicz is the natural mother of four children, including A.R.W. and Y.W.C., now aged 16 years and 11 years respectively. The children's fathers are deceased. Darlene married Mitchell Prokulewicz in 1970.

In 1971, the four children were found to be neglected by a Vermont district court and were transferred to the custody of the Vermont Department of Social and Rehabilitation Services. The children then came with their mother to live with their maternal grandparents in Minnesota. The State of Vermont retained legal guardianship and custody of the children, but the Hennepin County Welfare Department exercised courtesy supervision over them.

In 1972, the welfare department placed the four children in two foster homes because of the age of the grandparents. A.R.W. and Y.W.C. were placed in the same home and have remained there until the present.

In 1976, having unsuccessfully attempted to regain custody of her children in Vermont, Darlene Prokulewicz filed a petition for a writ of habeas corpus with the juvenile court seeking the return of A.R.W. and Y.W.C. The children's foster parents contacted attorney Bruce Hiller, who agreed to represent the children. At the initial hearing, the court appointed Hiller to represent the children, but on the first day of the hearing the court removed him as counsel for Y.W.C. On the second day of the hearing, upon petitioner's motion, the court dismissed the petition as to A.R.W. The court then appointed Hiller amicus curiae, and he

was permitted to participate fully in the hearing.

On May 16, 1977, the juvenile court ordered that the writ be made absolute and that Y.W.C. be returned to his mother's custody. We granted discretionary review, stayed execution of the order, and appointed Hiller as Y.W.C.'s guardian ad litem for purposes of appeal and authorized him to reopen the case to present additional evidence to the juvenile court. Hiller then informed this court that the record was complete.

Appellant contends that the juvenile court erred in failing to appoint a guardian ad litem for Y.W.C. and in failing to allow him counsel of his own choosing.[1] The juvenile court removed Hiller as Y.W.C.'s counsel when a conflict arose between Y.W.C.'s expressed desire to return to his mother and Hiller's contention that Y.W.C.'s best interests would be served by his remaining with his foster parents. Although the juvenile court did not appoint a guardian ad litem, both Hiller, as amicus, and the attorney for the welfare department fully participated in the hearings and were able to present the case against restoration of parental custody. Moreover, Hiller, after being appointed guardian ad litem by this court, was afforded the opportunity to present additional evidence to the juvenile court, but declined to do so. The juvenile court's removal of Hiller as Y.W.C.'s counsel when the conflict arose was not error. Further, if the juvenile court's failure to appoint a guardian ad litem was error, it was corrected by the order of this court appointing Hiller as Y.W.C.'s guardian ad litem.

Appellant further contends that the court below did not give sufficient weight to evi-

---

1. Minn.St. 260.155 provides, in part: "Subd. 2. The minor, parent, guardian or custodian have the right to counsel. If they desire counsel but are unable to employ it, the court shall appoint counsel to represent the minor or his parents or guardian in any other case in which it feels that such an appointment is desirable.

　　　*　　*　　*　　*　　*　　*

　"Subd. 4. (a) The court shall appoint a guardian ad litem to protect the interests of the minor when it appears, at any stage of the proceedings, that the minor is without a parent or guardian, or that his parent is a minor or incompetent, or that his parent or guardian is indifferent or hostile to the minor's interests, and in every proceeding alleging neglect or dependency. In any other case the court may appoint a guardian ad litem to protect the interests of the minor when the court feels that such an appointment is desirable. * * *'"

dence showing the conditions in the mother's home prior to the finding of neglect in 1971 and erred in placing the burden of proving the mother's present unfitness on appellants. We must conclude, however, that the court below did not err.

■ The record contains substantial testimony relating instances of violence, abusive language, possible sexual abuse, and excessive drinking that allegedly occurred in the mother's homes in California and Vermont. The findings of fact of the Vermont district court disclose that the neglectful situation in the Prokulewicz home was primarily caused by the excessive drinking of both Darlene and Mitchell Prokulewicz. The juvenile court's findings were supported by testimony below. It is apparent that in 1971 the Prokulewicz home was not a suitable environment for children. But, as we recognized in *State, by St. Louis Co. Welfare Dept. v. Niemi,* 284 Minn. 225, 231, 169 N.W.2d 758, 762 (1969), "[i]f the statutory purpose of returning neglected children to their natural parents is to be effectuated, the trial court should fully consider the 'new' evidence of rehabilitation and not give undue weight to the 'old' evidence of neglect."

■ Although not all the testimony at the hearing was favorable to petitioner, there is substantial evidence, including the testimony of witnesses adverse to the petition, that drinking in the Prokulewicz home has been significantly reduced. Darlene Prokulewicz has undergone treatment for alcoholism and has attended Alcoholics Anonymous. Y.W.C. told the court that he got along "great" with his mother and stepfather when he visited their home and expressed a desire to return to his mother. The evidence is sufficient to support the juvenile court's determination that returning Y.W.C. to his mother's custody would not be seriously detrimental to his interests.

■ In reaching this conclusion, the juvenile court correctly placed the burden of proving the mother's unfitness on the party objecting to restoration of parental custody.

In *In re Dependency of Klugman,* 256 Minn. 113, 118, 97 N.W.2d 425, 428 (1959), we stated:

" * * * Laws which permit the severance of the tie that binds a parent to a child recognize the sacredness of that tie and extend the hope of reunion. *State ex rel. Hilbert v. Probate Court,* 150 Minn. 16, 184 N.W. 27. We think the authorities in this state on the subject of dependent and neglected children indicate that the statutes ought to receive a liberal construction, not only as regards the best interests of the child, but also as regards restoration when the parent or parents reasonably prove that they are both able and willing to love, support, care for, and educate their children. This court has repeatedly held that the right of a parent to custody of their child is paramount and either parent is presumed to be a fit and suitable person to be entrusted with care of child or children born to and belonging to them. The burden of disproving this presumption rests upon those who challenge it. In other words, the presumption is that the parent is a fit and suitable person to be entrusted with the care of his child, and the burden is upon him who asserts the contrary to prove it by satisfactory evidence."

And, in *In re Petition of Alsdurf,* 270 Minn. 236, 242, 133 N.W.2d 479, 482 (1965), we noted, "The law in this state is well settled that it is in the best interest[s] of a child to be brought up by the mother unless she is wholly unequal to such responsibility." These cases indicate that the presumption of parental fitness is based not merely on a right of parents to rear their own children, but also on the public policy determination that the best interests of the child are normally served by parental custody. That principle applies not only in an original neglect proceeding but also where the parents, having once been found neglectful, "reasonably prove that they are both able and willing to love, support, care for, and educate their children" and seek restoration of custody.

■ We do not hold here that evidence of the conditions in the parent's home in the

past is irrelevant to the court's determination of present fitness. Nor do we require, as did the juvenile court, that such evidence be related to the present by a demonstration of a continuing "pattern." The court must have knowledge of past conditions if it is to make an informed judgment as to the effectiveness and sincerity of the parent's efforts to improve conditions in the home. Nonetheless, we reaffirm the principle expressed in *State, by St. Louis Co. Welfare Dept. v. Niemi,* 284 Minn. 225, 169 N.W.2d 758, that, where credible evidence of rehabilitation is presented, the trial court should not prevent effectuation of the statutory purpose of reuniting the family by giving undue weight to the evidence of the conditions that lead to the initial separation.

The order of the juvenile court is affirmed, and the stay of execution ordered by this court June 10, 1977, is hereby vacated.