**In re GUARDIANSHIP OF D.M.S.
and A.S., Minors.**

**No. CX–85–994.**

Court of Appeals of Minnesota.

Dec. 31, 1985.

Marilyn B. Knudsen, St. Paul, for appellants Mother and Aunt.

Alan I. Silver, St. Paul, for respondent Guardian.

Heard, considered, and decided by HUSPENI, P.J., FOLEY and FORSBERG, J.

## OPINION

HUSPENI, Judge.

Appellants, the mother and aunt of A.S. and D.M.S., appeal from the probate court's denial of their petition to remove respondent as guardian of the children and to appoint appellant aunt as guardian. On appeal, appellants argue (1) that the probate court lacks jurisdiction to continue the guardianship and (2) that the best interests of the children require that they be returned to their family. We remand.

## FACTS

On June 20, 1979, the mother of A.S. and D.M.S. entrusted the care of her children to a woman unrelated and unknown to her. The facts surrounding this transfer of care are not entirely clear. There is, however, some indication that mother was not able to care for her children at the time the guardian was appointed and offered to "sell" them for two beers. Mother consented to guardian's appointment.

The court accepted natural mother's signature on a consent form as a sufficient basis to give the proposed guardian custody of A.S. and D.M.S. Mother never appeared before the probate court and the court never inquired into her fitness as a parent. There is no indication on the record that the probate court examined the suitability of the guardian to have custody of A.S. and D.M.S. Formal letters of General Guardianship were issued by the probate court on August 21, 1979. At the time of this appointment, A.S. was three months old and D.M.S. was sixteen months old. The children have remained with their guardian since this time.

What stability and homelife A.S. and D.M.S. have known in the past six years has been provided by their guardian who is a sixty-year-old single woman. She has cared for the children while receiving AFDC for her and her grandchild's support but only General Assistance for the support of A.S. and D.M.S. She and the children have lived both in Florida and in Minnesota during this six year period. When the court asked her exactly when she had lived in Florida and when in Minnesota, the guardian was unable to remember or give any details about how long or when she had lived in either of the two locations.

A hearing on appellants' petition was held on April 15, 1985. The guardian testified that she was interested in adopting the children but had not as yet taken steps to do so, because the Welfare Department told her she must place the children in the custody of the State before initiating adoption proceedings.

The only evidence considered by the court was the testimony of mother, aunt, the guardian and two of her daughters. No information from outside sources was considered. Counsel for the guardian subpoenaed the children's school records and a report from their physician and made these documents available to the court at the hearing. The court indicated it was not necessary to submit this evidence.

Evidence presented at the hearing on the subject of the children's emotional and physical welfare included testimony by the guardian that they had been enrolled in the school systems in both Florida and Min-

nesota and that D.M.S. has been held back a grade by the Florida school system. At the time of the hearing, the guardian, A.S. and D.M.S. were living in Minneapolis and sharing a house with one of the guardian's daughters and her three children. Her daughter was also unemployed at this time and the sole source of income for her and her children was AFDC. The guardian was also caring for the child of one of her other daughters who was chemically dependent and unable to care for her child.

## ISSUES

1. Did the probate court have jurisdiction to continue the guardianship?

2. Did the probate court err in finding it was not in the children's best interests to remove the guardian?

## ANALYSIS

### I.

■ Appellants argue that because mother's parental rights are in effect being determined in this action, it is the juvenile court, not probate court, which has exclusive jurisdiction of the issues here. Under the particular circumstances of this case, we cannot agree.

In 1979 the probate court properly assumed jurisdiction under Minn.Stat. § 525.-54 (1978) when it appointed the guardian for A.S. and D.M.S. That statute provided that:

> The court may appoint one or two persons suitable and competent to discharge the trust as guardians of the person or estate or of both of any person who is a minor * * *.

Minn.Stat. § 525.54, subd. 1 (1978).

Subsequent to the guardian's appointment, Minn.Stat. § 525.6165 (1984) replaced section 525.54 with respect to the appointment of guardians for minors. Section 525.6165 permits a probate court to appoint a guardian for a minor only:

> if all parental rights of custody have been terminated or suspended by prior court order.

Minn.Stat. § 525.6165 (1984).

Therefore, the action taken by the probate court in 1979 would not be possible today. We must determine whether once having properly exercised its jurisdiction on appointing a guardian, the probate court continues to have jurisdiction over the guardian and ward to assure that the ward's interests are protected. We believe it does. *See, e.g., Schmidt v. Hebeisen,* 347 N.W.2d 62 (Minn.Ct.App.1984). Further, Minn.Stat. § 525.6195 (1984) provides that if after notice and hearing a probate court determines that removal of a guardian would be in the best interests of a child, it may remove that guardian.

Thus, we conclude that the probate court had jurisdiction to hold the April 15 hearing in response to appellants' petition.

### II.

Appellants next contend that the probate court erred in finding that removal of the guardian was not in the best interests of the children.

Appellants raise troubling issues. A review of both statutory and case law discloses strong public policy interests which favor natural parents as custodians of their minor children and which recognize the importance of fostering and nurturing the relationship between parent and child. Repealed Minn.Stat. § 525.54 (1978), which was applicable to this case when the guardian was appointed, provided:

> Nothing herein contained shall * * * abridge the rights of the father and mother, if suitable and competent, as the natural guardians of their minor children.

Minn.Stat. § 525.54, subd. 1 (1978).

This philosophy was preserved in Minn. Stat. § 525.6165 (1984) which permits the probate court to appoint a guardian for a minor only:

if all parental rights of custody have been terminated or suspended by prior court order.

These statutory provisions reflect the long recognized public policy stated in *In re Welfare of A.R.W.,* 268 N.W.2d 414, 417 (Minn.), *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978):

> that the best interests of the child are normally served by parental custody.

■ While recognizing the strong public policy favoring natural parents as guardians of their children, we also recognize that in this case, mother seeks custody not for herself but for her sister, the natural aunt of the children. Nevertheless, the withdrawal of mother's consent to the guardianship does raise the issue of the natural parent's right to make decisions about her children's welfare.

In *State v. Rensch,* 230 Minn. 160, 40 N.W.2d 881 (1950), as in this case, the guardian was appointed without any finding that the father was unfit as a parent and the father then tried to regain custody. The court noted that:

> The appointment of a guardian does not *ipso facto* divest the parent of the right to custody.

230 Minn. at 164, 40 N.W.2d at 883. Though not deciding who was entitled to custody, the *Rensch* court stated:

> The paramount consideration in such case is the welfare of the children, having in mind the general rule that a parent has the first right to custody unless he is unfit or, for some other reason, the welfare of the child will be best served by granting custody to some other person.

230 Minn. at 166, 40 N.W.2d at 884.

When the guardian was first appointed, there was no inquiry into the fitness of mother or the proposed guardian. At the April 15 hearing, the probate court stated the only issue was the best interests of the children, but it received no independent testimony regarding the fitness of any of the parties here.

■ We recognize that procedurally the probate court was required to consider only the narrow issues raised by the petitions, which alleged the guardian had violated her statutory duties. However, mother's petition also states that she no longer consents to the guardianship. Without her consent, the probate court's ruling goes beyond a review of statutory duties and operates as a de facto termination of mother's parental rights. Under these circumstances, we believe the probate court had a duty to inquire into all issues affecting the best interests of A.S. and D.M.S., including the public policy favoring the rights of natural parents regarding their children.

■ Another factor to be considered when determining the best interests of children is the long term stability that the proposed custody arrangement offers. *See Pikula v. Pikula,* 374 N.W.2d 705 (Minn. 1985). While the current custody arrangement appears to provide D.M.S. and A.S. with a loving and caring guardian, it also leaves their legal status in limbo. There have been no proceedings to reunite the children with their mother. There have been no juvenile court proceedings to terminate mother's parental rights although the probate court's decision in the April 15 hearing has, in effect, caused a termination of those rights. A juvenile court proceeding would provide the statutory safeguards to mother which are not available in the probate court. *See* Minn.Stat. §§ 260.-221–.241 (1984). Of course, there have been no adoption proceedings initiated.

Such legal limbo cannot possibly serve these children's best interests. What stability they now enjoy would almost certainly be disrupted if their guardian should become incapacitated. Further, the children and the guardian are presently relegated to a legal status that does not allow them to qualify for higher levels of financial support such as AFDC. It is doubtful that General Assistance can provide even the most minimal necessities for these children's nutritional, clothing, housing and educational needs.

■ We have thoroughly reviewed the present record and find insufficient evi-

dence to enable us to affirm the probate court under the particular circumstances of this case. The record reflects no consideration of the effect of natural mother's withdrawal of her consent to the guardianship. The record reflects no consideration of the capability of appellant aunt to care for the children. There is also no consideration of what weight, if any, should be given to natural mother's request regarding custody of her children. Of course, these considerations must be balanced against the fact that the guardian has provided for the care, comfort and stability of A.S. and D.M.S. for six years, a span of time encompassing almost their entire young lives. Further, the record does not contain any evidence about the children's financial status other than that they are receiving only General Assistance. Finally, the record does not contain sufficient evidence about how the children's current physical, emotional and financial needs are being met. The only evidence presented was that the children and their guardian have lived both in Florida and Minnesota since 1979 and that D.M.S. was held back a grade in the Florida school system. Other available evidence was apparently not reviewed by the probate court.

We conclude that this matter must be remanded for an appropriate study to resolve the issues addressed in this opinion. We can devise no more satisfactory method of sensitively and conclusively ascertaining where the best interests of D.M.S. and A.S. lie and of ending the dilemma in which this natural mother (and aunt) and this long-term guardian now find themselves.

## DECISION

The record does not sustain the probate court's finding that removal of the guardian was not in the best interests of A.S. and D.M.S. The probate court shall order that an appropriate study be conducted to determine the physical, emotional and financial conditions in which the minor children are now living and to determine whether their best interests will be served by granting custody to their natural aunt (pursuant to

mother's request) or retaining custody with their appointed guardian. Because of the unique circumstances of this matter and because the probate court's ruling resulted in a de facto termination of mother's parental rights, we strongly urge the probate court, upon completion of the study herein ordered, to consider whether the interests of the children would best be served by transferring jurisdiction of this matter to juvenile court.

Recognizing the emotional ties that exist between A.S. and D.M.S. and their guardian, we further direct that the children continue to reside with their guardian while the study is being conducted. The children are not, however, to leave Minnesota during the study.

Remanded.

FORSBERG, J., dissenting.

FORSBERG, Judge, dissenting:

I respectfully dissent. The probate court had jurisdiction to hear the mother's and aunt's petitions for removal of the guardian, as the majority concludes. The record, however, fully supports the probate court's order denying the petitions. Neither the allegations in the petition nor the testimony at the hearing indicate that it is in the best interests of the children to be removed from custody of the guardian. Moreover, they present no grounds to justify either a remand for a home study or a suggestion that jurisdiction be transferred to juvenile court. Accordingly, I would affirm the trial court.

At the time of the guardian's appointment, the guardianship statutes allowed such an appointment without regard to the status of parental rights. Minn.Stat. § 525.54 (1978). The petitioner for guardianship was required to state the names and addresses of the parents. Minn.Stat. § 525.542 (1978). Here the mother consented to the guardian's appointment. That she had reason to consent is shown by evidence in the record of her inability to parent not only these children but her other children as well.

Neither the facts of this case, therefore, nor the statutes themselves suggest a necessary conflict between probate court jurisdiction over guardianship and juvenile court jurisdiction over questions of parental rights. The majority would create such a conflict by terming guardianship of a minor a de facto termination of parental rights.

The majority states that the facts of the transfer of the children's care are unclear. However, while no finding was made by the trial court, the testimony of the guardian's daughter that the mother offered to sell the children for two beers was not rebutted or impeached by the mother.

The petitions for removal of the guardian both allege failures to comply with procedural requirements imposed on guardians. *See* Minn.Stat. §§ 525.58, subd. 1 (1984) (filing of annual account), subd. 2 (notice to a ward of the right to petition for restoration of capacity), 525.56, subd. 4(3) (1984) (representing the ward in court proceedings). None of these requirements were applicable here. More importantly, the evidence presented to support the petitions does not support this court's decision to direct home study and suggest transfer of jurisdiction.

The statute requires the probate court to determine whether removal of the guardian would be "in the best interests of the ward[s]." Minn.Stat. § 525.6195(a) (1984). The mother's withdrawal of consent did not alter this standard, or transform the proceeding into a review of the 1979 guardianship appointment.

The mother and aunt failed to present any evidence indicating the best interests of the children lay in transferring custody to the aunt. By limiting their petition to procedural grounds, they sought to evade the issue of the fitness of either mother or aunt to properly care for the children. When they objected to such evidence being presented by the guardian, the probate court properly noted that this issue was raised by the petition for appointment of the aunt as a successor guardian. Nearly all the evidence relating to the welfare of the children was presented by the guardian. Nevertheless, the majority here finds in the failure of the mother's proof a basis for juvenile court intervention in the guardianship.

Testimony presented by the guardian showed that under her care the children are happy, engaged in social activities, attending church and doing well in school. As the majority notes, the guardian has provided the only stability and nurture these children have known. The mother has not seen the children in six years. She has three other children, none living with her. Two of her children have been adopted and the other, whom she admitted she could not care for adequately, is living with her sister, the second petitioner here. The mother recalled telling the guardian, at the time of the appointment in 1979, of her inability to care for the children, and her relief that the guardian was providing that care.

The probate court has broad discretion to select an appropriate guardian for a ward. *In Re Guardianship of Fingerholtz*, 357 N.W.2d 423, 426 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 6, 1985). In general, the findings of the trial court must be affirmed unless clearly erroneous. *Matter of Welfare of Solomon*, 291 N.W.2d 364, 367 (Minn.1980) (termination of parental rights). The evidence here amply supported the trial court's denial of the petitions for removal and appointment of the aunt as successor guardian.

The majority relies in part on the presumption of a natural parent's fitness for custody. Although the record does not reflect a consideration for this presumption, this deficiency is plainly due to the mother's reluctance to allow an inquiry into her neglect and abandonment of the children. The "sale" of the children is, by itself, sufficient to rebut the presumption of parental fitness.

When it comes to a comparison of alternative custodians, or guardians, of the children, however, the majority recognizes that custody was sought for the natural aunt rather than the mother. But, while there is

authority for consideration of family members as the most appropriate guardians, *see Schmidt v. Hebeisen,* 347 N.W.2d 62, 64 (Minn.Ct.App.1984) (adult ward), there is no presumption that an aunt or other extended family member is fit to parent a child. The aunt cares for five children, the guardian six; each is receiving AFDC, although the guardian's grant is only for her grandchild. There was no evidence supporting a preference for the aunt, requiring a transfer of custody and disruption in the lives of the children.

The majority expresses concern over the uncertain legal status in which the children are currently placed. They note that no proceedings have been brought either to reunite the children with their mother or for the guardian to adopt the children. However, the fact that the parties have not availed themselves of existing alternative remedies is irrelevant to our review of the probate court's order.

The mother could seek a court order requiring visitation. *See State v. Rensch,* 230 Minn. 160, 164, 40 N.W.2d 881, 883 (1950) (appointment of guardian does not of itself divest the parent of the right to custody). She could petition in juvenile court alleging the children are neglected or dependent. Minn.Stat. § 260.131, subd. 1 (1984). More importantly, she could at any time bring a petition for removal of the guardian on other than procedural grounds, allowing a comparison of alternative custodians and a fuller consideration of the best interests of the children. Minn. Stat. § 525.6195(a) (1984).

This court's concern over the welfare of the children is well-founded. I differ from the majority, however, in seeing no grounds for further intervention, or for invocation of juvenile court jurisdiction, in the removal petitions.

The record indicates that the guardian, who is receiving AFDC, is in contact with the welfare department, and is visited by a social worker. The social worker, and responsible welfare authorities, may determine whether proper care is being provided to the children. The record indicates that the guardian called her social worker the day after the children were placed in her care. I believe Ramsey County Social Services is the proper authority to determine the adequacy of the children's care, including income level, and the necessity of a custody or home study, not this court. Particularly not on the basis of the petitions presented here.

The probate court's decision denying the petitions for removal was fully supported by the available evidence. Indeed, there was no evidence, other than income level, to suggest that the present guardianship is not in the best interests of the children. While the facts behind the guardianship appointment are embarrassing, they do not divest the probate court of jurisdiction, nor impugn the care given by the guardian.

The majority here departs from the proper standard of review because of deficiencies in the original guardianship appointment. That appointment, however, is not at issue, nor should this court attempt to correct it at the expense of disrupting the lives of the children. While the mother has withdrawn her consent, this comes after six years. *Cf. State v. Rensch,* 230 Minn. at 161–62, 40 N.W.2d at 882 (withdrawal of consent after 2 months).

The standard to be applied by the trial court was the best interests of the children. The "sale" of the children would rebut the presumption of parental fitness, if at issue. Neither that presumption, nor the low income level of the guardian, which is shared by the mother and aunt, support the remand and custody study ordered.