In the Matter of the WELFARE OF M.J.L., R.D.L., and C.A.B.

No. C2–98–164.

Court of Appeals of Minnesota.

Aug. 18, 1998.

Michael J. Dolan, Thornton, Hegg, Reif, Johnston & Dolan, P.A., Alexandria, for appellants Golke.

Marcia G. Bremer, Office of the Douglas County Attorney, Alexandria, for respondent Douglas County.

Todd E. Chantry, Peters, Churchwell & Chantry, Long Prairie, for guardian ad litem.

Considered and decided by SHUMAKER, P.J., and AMUNDSON and SCHULTZ, JJ.*

## OPINION

SHUMAKER, Judge.

Respondent Douglas County removed M.J.L., R.D.L., and C.A.B. from the foster care of appellants Dave Golke and Jill Golke after spousal abuse, child maltreatment, and other foster care rule violations occurred. Under Minn.Stat. § 260.245, the Golkes challenged the county's decision and its guardianship of the children. After an evidentiary hearing, the district court determined that the county acted in the children's best interests by removing them from the Golke foster home. The Golkes appeal. We affirm.

## FACTS

Foster parent appellants Dave Golke and Jill Golke brought an action to remove respondent Douglas County from its role as guardian of three minor children, M.J.L., R.D.L., and C.A.B. Until the county removed the three children in May 1997, they had lived with appellants since September 1994. The county removed the children from the Golkes' home after it learned that spousal abuse, child maltreatment, and numerous other violations of foster care rules occurred.

At the foster care placement in 1994, the children had considerable behavior problems. During the time they were with the Golkes, the children's behavior improved. In April 1997, the Golkes, with the county's support, sought to adopt the children.[1] At that time, the persons professionally involved with the children and the Golkes believed that the adoption should occur.

In March 1997, one of the children told a therapist that the children saw Dave Golke strike Jill Golke. The children's social worker learned of the allegation, met with other county staff, and decided to approach the issue with Jill Golke through one of the children's therapy sessions. The social worker's goal was to try to deal with the incident and still keep the adoption process on schedule. The county decided not to remove the children because it was not concerned that the Golkes would physically or sexually assault or abuse the children.

Before Jill Golke saw the therapist, however, the social worker received a telephone call on or about April 23, 1997, from Mary Lambert. Lambert and her husband were acquaintances of the Golkes and had provided respite care for the children. Mary Lambert told the social worker of a number of concerns she had about the Golke home, including escalating abuse between the Golkes, some of which occurred in front of the children, and she reported that one of the children had been hit or kicked and bruised by Dave Golke. Dave Golke had voluntarily disclosed the kicking incident to the county about one year prior to Mary Lambert's report. The county chose not to treat the disclosure as a report of abuse.

Acting on Mary Lambert's information, the social worker telephoned others who had contact with the Golkes and the children. The persons with whom the social worker spoke were concerned with some of the Golkes' means of disciplining the children, such as leaving the children unattended and preventing a child from attending school because he was "naughty." The county considered these types of discipline to be abusive. The telephone conversations and additional allegations convinced the social worker and other county employees to classify the allegations as child protection reports. The county decided to employ adjacent Todd County for the investigation to make it as fair and impartial as possible because of the long, positive relationship between the Golkes and Douglas County.

Todd County made its investigation in May 1997 and concluded that maltreatment, specifically one of the children being kicked by Dave Golke, had occurred and that child protective services were needed. Douglas County removed the children and placed them with the Lamberts.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The long delay in initiating adoption proceedings was due to the lengthy process of terminating the parental rights of the children's biological mother.

The Golkes began an action against the county one week later. They moved the trial court, inter alia, to: (1) remove the county as the children's guardian, (2) appoint them as guardians, and/or (3) place the children in their home for long-term foster care. At an evidentiary hearing in October 1997, the trial court received testimony from nineteen witnesses and concluded that the Golkes had not met their burden of proving that the county should be removed as guardian. The Golkes appeal that decision.

## ISSUE

Did the trial court abuse its discretion when it concluded that the county should continue as guardian for M.J.L., R.D.L., and C.A.B.? [2]

## ANALYSIS

■ On appeal from a judgment where there has been no motion for new trial, the only questions for review are whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment. *Erickson v. Erickson*, 434 N.W.2d 284, 286 (Minn.App.1989). An appellate court will reverse a trial court's findings of fact only if, upon review of the entire record, the appellate court is left with a definite and firm conviction that a mistake has been made. *In re Guardianship of Dawson*, 502 N.W.2d 65, 68 (Minn.App.1993) *review denied* (Minn. Aug. 16, 1993). "The guiding principle in all custody cases is the best interest of the child." *Pikula v. Pikula*, 374 N.W.2d 705, 711 (Minn.1985).[3]

■ Appellants' action to remove the county from its role as guardian to the three

children in this case is based on two statutes. First, under a provision of the termination of parental rights chapter, appellants rely on language that states that "an interested party" may petition the court to remove a child's court-appointed guardian and to have a new guardian appointed. Minn.Stat. § 260.245 (1996). As noted, appellants were in the process of seeking to adopt the children. The supreme court has held that persons petitioning to adopt children are "interested parties" under this state's adoption, parentage, and termination of parental rights statutes. *In re Paternity of J.A.V.*, 547 N.W.2d 374, 376 (Minn.1996). Accordingly, we conclude that appellants properly brought their action under Minn.Stat. § 260.245.

■ The second statutory provision at issue is Minn.Stat. § 525.6195(a) (1996). Because Minn.Stat. § 260.245 does not define when guardianship should be terminated, the parties and the trial court, noting the similarities between guardians under the Minnesota Probate Code and guardians under the termination of parental rights chapter, borrowed the best-interests standard set out in the probate code which provides that an interested person can petition to remove a guardian on the ground that removal would be in the best interests of the ward. Minn. Stat. § 525.6195(a). The best-interests standard set forth in Minn.Stat. § 525.6195(a) has been applied in the family law context in a case that addressed the removal of a guardian ad litem. *In re Welfare of B.B.B.*, 393 N.W.2d 436, 437 (Minn.App.1986).

We conclude that, because of the similarities in the parental termination and probate statutes, the previous application of the probate code's guardian-removal criteria to the

---

**2.** The Golkes raise two additional issues on appeal: (1) whether the district court abused its discretion by refusing to appoint the Golkes as guardians, and (2) whether the trial court abused its discretion when it refused to place the children with the Golkes for long-term foster care. Because we conclude that the county acted in the children's best interests by removing the children, we necessarily conclude that the children's best interests would not have been better served with guardianship or placement with the Golkes.

**3.** Appellants argue that extra scrutiny should be applied to the findings made by the trial court

because they claim it adopted the county's proposed findings of fact verbatim. However, a careful comparison of the proposed findings of fact and the actual findings of fact demonstrates that the district court did not adopt the county's proposed findings verbatim but rather deleted some, altered some, added its own, and, in sum, created findings of fact that were "detailed, specific and sufficient enough to enable meaningful review by this court." *Bliss v. Bliss*, 493 N.W.2d 583, 590 (Minn.App.1993) *review denied* (Minn. Feb. 12, 1993).

removal of a guardian ad litem, and the overall prevailing best interests of the child standard that governs all actions regarding a court's child custody determinations, *Pikula*, 374 N.W.2d at 711, it is appropriate to apply the best-interests standard to a petition to remove the guardian of child.

■ Appellants argue that the multi-factor, best-interests formula used in dissolution proceedings should have been applied in this case and the trial court's failure to confine its findings to only those factors was error. *See* Minn.Stat. § 518.17 (1996) (enumerating factors). The best interests of a child or a ward in a guardianship setting, however, differ from the much more common situation facing a child in a marital termination proceeding for which the section 518.17 factors were created. This court has recognized that the section 518.17 factors are not the exclusive means to determine what is in a child's best interests. *See In re Paternity of B.J.H.*, 573 N.W.2d 99, 102 (Minn.App.1998) (distinguishing the use of the factors in custody settings from their use in the paternity setting and concluding that the list of factors in section 518.17 is not exhaustive in either setting). Cases that have addressed the best-interests standard in the termination-of-guardianship setting have cited *Pikula*, but have not applied the numerous factors that case set out. *See In re Guardianship of D.M.S.*, 379 N.W.2d 605, 608–09 (Minn.App.1985). In fact, *D.M.S.* specifically recognized that proceedings to terminate a guardianship are unique and that the district court must have discretion to consider all the factors it believes influence the best interests of the child. *Id.* at 608. We conclude that, where applicable, a court may use the best-interests factors of section 518.17, but it is not limited to only those factors nor need it apply all of them. If a court's findings and conclusions demonstrate that it carefully sought to determine the best interests of the child, this court will not reverse that decision absent an abuse of discretion.

■ In this case, after reviewing documentary evidence and weighing numerous witnesses' credibility, the trial court found: (1) one of the county's primary goals for the children was to keep them together; (2) the Golkes had greater difficulty with M.J.L. than with the other two children and inquired whether they could adopt the other two children and not M.J.L.; (3) after the investigation of the Golkes, the children were removed and placed in a setting where all three could remain together as a unit; (4) M.J.L. needed an environment that was "free of neglect and abuse" and that was "warm and fuzzy"; (5) some of the Golkes' disciplinary techniques were inappropriate, including but not limited to picking the children up and dropping them if they would not leave the table on their own and requiring the children to sleep on the linoleum floor of their rooms with only a blanket if they would not stay in their beds; (6) domestic abuse occurred between the Golkes; (7) Dave Golke kicked M.J.L.; (8) it would be dangerous for M.J.L to return to the Golke home because she would be retaliated against for telling her therapist that Dave Golke had hit Jill Golke; (9) the three children should not be separated because they protect each other and function as a team; (10) the Golkes' conduct violated foster care rules at least 34 times; and (11) adoption by an older couple with patience and unconditional love would best serve the children.

After reviewing the evidence in its entirety, we conclude that it supports the trial court's conclusion that the county's removal of the children was in their best interests and was not an abuse of its role as guardian of the children. The decision of the trial court is affirmed.

## DECISION

When Douglas County, acting as guardian to M.J.L., R.D.L., and C.A.B., removed children from the Golkes' foster care because of spousal abuse, child maltreatment, and other foster care violations, the trial court did not abuse its discretion by concluding that the county acted in the best interests of the children.

**Affirmed.**