STATE EX REL. RAYBURN BURRIS AND ANOTHER
v. DOROTHY HILLER AND ANOTHER.
STATE EX REL. JOANNE HILLER TODD v. SAME.

104 N. W. (2d) 851.

July 22, 1960—Nos. 38,044, 38,045.

*Leo J. Lauerman, Gordon Rosenmeier,* and *John E. Simonett,* for appellants.

*Quarnstrom & Doering* and *Meehl & Wiltrout,* for respondents in first appeal.

*Thomas Welch,* for respondent in second appeal.

NELSON, JUSTICE.

A writ of habeas corpus was issued by the district court upon the petition of Rayburn Burris and Myrtle Burris challenging the right of Wray Hiller, Jr., and his wife, Dorothy Hiller, to the custody of John Bradley Hiller, born December 6, 1957. After a hearing, the trial court awarded custody to the petitioners who are the maternal grandparents of said minor child. Dorothy Hiller and Wray Hiller, Jr., have appealed to this court where a referee was appointed with directions to take and report to this court the evidence which the parties desired to submit, without findings by the referee as to the facts or the law.

John Bradley Hiller, the subject of this custody proceeding, is the son of John W. Hiller and his wife, Dorothy Burris Hiller (not the same person as the above Dorothy Hiller), the only daughter of Rayburn and Myrtle Burris. Wray Hiller, Jr., is a brother of John W. Hiller who was commonly called Jack Hiller.

Prior to his marriage to Dorothy Burris, Jack Hiller had been married to JoAnne Hiller Todd on June 13, 1948. Jack Hiller and JoAnne Hiller Todd were the parents of two daughters, Wendy Hiller, born July 2, 1949, and Susan Hiller, born August 16, 1951. Jack and JoAnne were divorced on July 14, 1954, and Jack Hiller was awarded custody of the daughters. Thereafter, on March 17, 1956, JoAnne Hiller Todd married Dr. Thomas Todd and in 1956 and again in 1957 she moved for a modification of the divorce decree to obtain the custody of her daughters, both of which motions were denied.

On July 7, 1956, Jack Hiller married Dorothy Burris Hiller. John Bradley Hiller, born December 6, 1957, resided with his parents and half sisters, Wendy Hiller and Susan Hiller, in Marshall, Minnesota, until June 23, 1959. On the latter date Jack Hiller and Dorothy Burris Hiller were killed in an automobile accident, in which accident John Bradley Hiller and Susan Hiller were seriously injured. The three children were all hospitalized at Willmar, Minnesota.

On June 25, 1959, two days after the accident occurred, Wray Hiller, Jr., on advice of counsel, petitioned the Lyon County Probate Court for appointment as special guardian of the three Hiller children. In addition to being appointed special guardian, he also petitioned said probate court for his appointment as guardian of their estates.

The three children were discharged from the Willmar hospital June 27, 1959. Wendy Hiller was taken to the home of Wray Hiller, Jr., but Susan Hiller and John Bradley Hiller were taken to St. Barnabas Hospital in Minneapolis for further treatment. They were discharged from St. Barnabas Hospital on July 9, 1959, and taken to the home of Wray Hiller, Jr., in Wayzata, where the three children resided at the time the proceedings herein were commenced.

Another writ of habeas corpus was issued by the same court on the same date upon the relation of JoAnne Hiller Todd to determine the custody of Wendy Hiller and Susan Hiller. The two proceedings were consolidated for trial, and the custody of the girls was awarded to their natural mother, JoAnne Hiller Todd. Thereafter, on February 20, 1960, the custody of the girls was transferred to JoAnne Hiller Todd, pursuant to the terms of a stipulation made in open court. A part of the stipulation was in the following language:

"There will be no hindrance imposed by JoAnn Todd or Thomas Todd on the Hillers' normal privilege as uncle and aunt to visit the girls and the girls to visit them, but there is and will be a reciprocal responsibility on the part of the Hillers to recognize that JoAnn Todd has the sole responsibility for, and the undivided right of care, custody and control of her children, Wendy Rae Hiller and Susan Adelle Hiller and the Hillers must not be presumptious or unreasonable in insisting on a visit at any time or under any circumstances nor interfere with their mother's authority over them."

The Hillers voluntarily relinquished the two girls to the Todds although they had appealed to this court from the order of the trial court. The aforesaid stipulation was suggested to modify the order of the trial court in the matter of the custody of Wendy and Susan Hiller, transferring their custody to their natural mother, who, it is conceded, became legally entitled thereto at the death of the father.[1]

It was stipulated by counsel before the referee that the record of the trial in the district court, as embodied in the transcript, exhibits, and judgment roll, should be considered by the supreme court as though the witnesses were present and testifying and as though all objections were stated again at the same point in the testimony.

Just prior to the trial in the court below, Rayburn Burris became 67 years old; his wife was then 63. His life expectancy was at the time 11.73 years and his wife's, 14.14 years. It was shown that they had taken physical examinations shortly before the trial to determine their ability to take care of their grandson. These examinations disclosed apparent good health, but it was also shown that Mr. Burris had had heart trouble in 1947 and that Mrs. Burris was, in the fall of 1958, troubled with sciatica and needed doctors' attention at the time. The Burrises are members of the Methodist Church and active in the work of their church. Their home is physically comfortable and near school. They also have a lake home, and they are financially able to undertake the care and custody of a child. They are people of high integrity, honesty, and excellent character, and no doubt they have a feeling of love and affection for John Bradley Hiller. The Hillers do not question any of this.

We think the evidence, including the additional testimony taken before the referee, fairly leads to the conclusion that there is no present

---

[1] The rule of most jurisdictions runs to the effect that, when a divorce decree gives the custody of a child to one of the parents and the parent custodian dies, the so-called right to custody immediately and automatically inures, or accrues or reverts, to the surviving parent. Annotation, 39 A. L. R. (2d) 260; State ex rel. Merritt v. Eldred, 225 Minn. 72, 29 N. W. (2d) 479. The presumption is that the parent is fit and suitable. Kienlen v. Kienlen, 227 Minn. 137, 34 N. W. (2d) 351; State ex rel. Gravelle v. Rensch, 230 Minn. 160, 40 N. W. (2d) 881.

ill feeling between the Burrises and the Hillers, unless this litigation provides evidence of it. It appears that the Burrises have visited the Hillers' home frequently while the lawsuits have been pending. Prior to the trial before the referee, when the Hillers went away for a few days on a combined business and pleasure trip, the Burrises had John Bradley Hiller in their home at the Hillers' suggestion. Wray Hiller, Jr., indicates that he would want John Bradley Hiller to have a fine relationship with his maternal grandparents.

The record indicates that John Bradley Hiller, as a result of the accident, suffered compound fractures of the skull, multiple lacerations, and fracture of the maxilla, this requiring the attendance of a doctor at New London after the accident and later of a specialist neurosurgeon, Dr. Buchstein, in Minneapolis.

There has been some suggestion that there was some impropriety on the part of Wray Hiller, Jr., in rushing the matter of obtaining the appointment as special guardian of the persons of the minors and as general guardian of their estates. It is conceded, of course, that there was urgency at the time and a necessity that someone be clothed with the power to make decisions under the circumstances, especially when the three children involved in the accident were in dire need of medical attention. We think the record indicates that there can be no just complaint in regard to the care and attention given the children from and after the time the accident occurred.

The trial court made it clear in its memorandum that in neither of its orders did it intend to reflect upon the capability of the appellants to care for the children. He made it clear that those who were denied custody were fine people, as well as those who were granted custody.

In passing we might make reference to the fact that Wray R. Hiller, Sr., became an intervenor alleging a status of natural guardianship as the paternal grandfather of John Bradley Hiller. Apparently his purpose was to thereby consent to his son's custody. The trial court dismissed his complaint and he has taken no appeal therefrom. It should be noted that the paternal grandparent Hiller was 72 years of age, several years older than either of the Burrises.

The appellants, while citing no Minnesota case holding that a surviv-

ing paternal grandfather is the natural guardian of an orphan grandchild as against the maternal grandparents, do cite In re Guardianship of Lehr, 249 Iowa 625, 87 N. W. (2d) 909, for that proposition. In that case the court said that failure of the paternal grandparents to assert rights as natural guardians of their orphaned grandchild was a waiver of their right to custody as against the maternal grandparents, who by the waiver were "established" as natural guardians. Since the complaint in intervention was dismissed below and no appeal has been taken, we do not feel called upon to reach a decision on that issue.

Appellants assert that it is necessary to determine a basic constitutional question, which they state was preserved at the beginning of the trial in the district court and raised again by motion to quash at the beginning of the referee's trial. It is claimed that this directly involves jurisdiction; that it is de novo here. The motion is based upon the difference between the wording of Minn. Const. art. 6, relative to jurisdiction of probate courts, as it was prior to the 1956 amendment and as it is now. The changes we are concerned with are shown by italics:

"Section 1. The judicial power of the state is hereby vested in a supreme court, *a* district court, *a* probate court, * * *.

\* \* \* \* \*

"Sec. 6. The probate court shall have *unlimited original jurisdiction in law and equity* for * * * all guardianship and incompetency proceedings, * * *."

Appellants contend that by reason of the emphatic assertion of "unlimited original jurisdiction" it was intended and in fact did cause a change so that State ex rel. Gravelle v. Rensch, 230 Minn. 160, 40 N. W. (2d) 881, is no longer the law and that the courts of this state are now bound to give effect to the amended constitutional definition of jurisdiction in cases of this kind. They argue that the new language can hardly be held to be meaningless or inadvertent, and its clear expression is that jurisdiction of guardianship, which includes the guardian's duty of custody, is now solely in the probate court. The

Gravelle case remains the controlling case on that issue in this state.

It has long been the rule in this state, and it is the rule of the great weight of authority, that where custody of a minor child is granted to one parent by a divorce decree, and such parent dies, the right of custody automatically inures to the surviving parent, absent a showing that he is unfit. In the Gravelle case we stated the rule to be (230 Minn. 164, 40 N. W. [2d] 883):

"The guardianship proceedings constitute no impediment to the exercise by the District Court of its equity powers in suits involving the custody of minors."

We have most certainly followed the rule that, in determining who shall have custody as between a parent and a guardian, the controlling consideration is the welfare of the child. We considered these rules in the Gravelle case and said therein that (230 Minn. 165, 40 N. W. [2d] 884):

"While the precise question presented here seems to be one of first impression in this state, we assume it is so because it has never been thought that appointment of a guardian would divest the district court of jurisdiction to determine the right to custody of minor children in an appropriate proceeding."

We see nothing in the wording of Minn. Const. art. 6, as amended, which would constitute an impediment to the exercise by the district court of its equity powers, it being a court of general jurisdiction possessed of far-reaching inherent powers. We can see no logic in a rule, even under the present wording of art. 6, which would ipso facto divest the parent of the right to custody by reason of the appointment of a special guardian of his child's person or of a guardian of both his person and estate. It is clear from the record that the trial court was not concerned with the claim that the amendment of art. 6 divested the district court of jurisdiction in these matters.[2] See cases cited in the Gravelle case in support of the rules therein approved.

Wray Hiller, Jr., is connected with Pillsbury Company in its grain

[2]See, M. S. A. 525.56 and 525.591; In re Adoption of Zavasky, 241 Minn. 447, 450, 63 N. W. (2d) 573, 576.

marketing division at an annual salary in excess of $14,000. The family of Wray and Dorothy Hiller includes two boys, Scott, 12, and Rob, 9. Mrs. Hiller was in the past a teacher of English and Mr. and Mrs. Hiller both are university graduates. Their home at Wayzata is comfortable and spacious enough to accommodate John Bradley Hiller should they be granted custody. There is no question about the financial and physical ability of the Hillers to give him a good home.

At the time of the trial below John Bradley Hiller was 21 months old. He has been in the custody of his uncle, Wray Hiller, Jr., and his wife since he was released from the hospital, living there with his half sisters until it was agreed that their custody should be transferred to their mother. The record shows that the Hillers are friendly, cultured people who maintain a Christian home where life is focused on the welfare of the children in it. Wray Hiller, Jr., is now approximately 41 years of age and his wife, Dorothy, 38 years of age. Both like the outdoors. They actively participate in skiing, boating, water skiing, hunting, swimming, fishing, and golf, and the children, to the extent of their abilities, are permitted to take part with them. The relationship between the Wray Hiller children and John Bradley Hiller has been most satisfactory.

Another important fact disclosed by the record in this case is an understanding that apparently existed between Wray Hiller, Jr., and his brother, Jack Hiller. It appears that they were very good friends as well as brothers, and in answer to a question by counsel for petitioners, Wray Hiller, Jr., said:

"* * * as you, yourself, know, my brother and I were very close. It was my brother's wish that if anything should ever happen to him that I was to take care of his children—

\* \* \* \* \*

"It was always his wish and desire that if anything were to happen, that I would care for his children and adopt them. This was a well-understood thing between us and we talked about it many times."

It should be noted here that Jack Hiller's will left his entire estate, valued at about $93,000, in trust for his three children, and that Wray

Hiller, Jr., and Northwestern National Bank of Minneapolis are co-trustees.

The testimony taken before the referee would indicate that family animosity engendered in the divorce of JoAnne and Jack Hiller has no present proved foundation; that such did not survive the district court trial; and that at the time of the hearing before the referee the Hillers and the Todds had reached an understanding which has obliterated previous resentments. Visitations have followed back and forth, and the parties have clearly demonstrated that none of the parties want to stand in the way of John Bradley Hiller growing up to know and frequently visit with his grandparents and likewise to know his half sisters by visitations freely arranged between the grandparents and those who are trusted with the custody of these children, be it divided or otherwise.

■ The well-established rule in this state in matters involving custody of minors is that the welfare of the child is the prime consideration in determining the custody. State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329, 18 Minn. L. Rev. 591. Traditional sentimental considerations are no longer imperative. In re Petition of Hohmann, 255 Minn. 165, 95 N. W. (2d) 643.

■ We are persuaded after carefully considering the record before us that the ages of Dorothy and Wray Hiller, Jr., will give them a distinct advantage in being able to understand and cope with John Bradley Hiller and his problems—which they have now experienced from babyhood—through his adolescent years to maturity. We think the record warrants the concession that the maternal grandparents will be handicapped by reason of their advanced age in the matter of providing the necessary patience and the continued ability to understand and cope with the problems of a child now only 2 years of age. The probability of their living to rear John Bradley Hiller to maturity is decidedly less than that of the uncle and his wife.

We have carefully taken into account the testimony, before the referee, of the Reverend Harold King, the pastor of the Wayzata Community Church, and that of Dr. Jack Wallinga, a specialist in child psychiatry. These witnesses give evidence of an understanding ap-

proach to child psychology and what goes to make up the prime consideration in determining the welfare of the child where the question of custody is to be determined. Both agree, understanding that the maternal grandparents are without question people of integrity, good reputation, financial means, and have the ability to furnish a comfortable home, that the welfare of the child would be very greatly enhanced if he could be put in a home where he has not only the active, alert influence of younger parents, but where he will have the stimulation and the guidance of those who take the place of older brothers. Under the circumstances as they exist in the instant case, the younger set of parents would be more likely to offer continuity of family life, a matter of great importance to a growing child; to furnish the father-son relationship of the normal, healthy, active kind involving doing things together, things that a boy needs to do to grow up in a healthy masculine pattern—outdoor activities, sports participation, camping, and that kind of thing. Generally younger parents have more emotional resiliency in handling the problems that children, perhaps particularly boys, often demonstrate in growing up. Added thereto is the fact of the presence of two other children, boys, in the home, which would avoid the child's becoming subject to overprotection and overindulgence, which older people, and especially grandparents, so often are prone to exhibit.

It is not often that there is so little to criticize on the part of those seeking child custody. Nevertheless, age must of necessity become a determining factor in the present case since it is hazardous to predict whether the actual life expectancy may be more or less than that indicated in the tables commonly relied upon. We think the record establishes that the Burrises recognize that, all things being equal, this might justifiably throw the weight of the evidence in favor of the younger appellants who the deceased father had indicated during his lifetime would be his choice to have custody of his child.[3]

As we said in State ex rel. Herniman v. Markson, 187 Minn. 176, 178, 244 N. W. 687:

---

[3]See, In re Guardianship of Carrick, 250 Iowa 1181, 98 N. W. (2d) 315.

"The question is whether the welfare of the boy requires that he remain with his grandparents. They are in all respects worthy people in fair circumstances, and they give the boy a good home and indulgent care. He has been with them since he was less than a year old.

"* * * The grandfather is 83 years old and feeble. The grandmother is 75 years old and sprightly for one of her age. They cannot many years longer give him the care which they have gladly furnished him, and the duty will fall upon someone else.

* * * * *

"* * * The grandparents must accept the inevitable. * * *

"All realize that the grandparents' custody must terminate before many years. It is best that the change come now."

Natural parents have the first right to the care and custody of their child, unless the best interests of the child require it to be given into the hands of someone else. In re Guardianship of Maloney, 234 Minn. 1, 48 N. W. (2d) 313, 49 N. W. (2d) 576. A surviving parent should not be divested of that custody unless it appears that the best interests of the child so demand. Kienlen v. Kienlen, 227 Minn. 137, 34 N. W. (2d) 351. Clearly, where, as here, the maternal grandparents seek the custody of their grandchild, their right to his custody must likewise yield to the best interest of the child. See, 14 Dunnell, Dig. (3 ed.) § 7297, and cases therein cited, and 6 Id. § 2800, and cases therein cited.

The trial court has heretofore determined that the surviving parent, JoAnne Hiller Todd, is entitled to the custody of her two minor daughters.

The trial court is directed to modify that order in accordance with the stipulation made before the referee to the effect that JoAnne Hiller Todd and Thomas Todd, her husband, will not change their domicile from Minnesota for a period of 2 years; that said Thomas Todd will not attempt to adopt the two children or either of them until after October 1, 1961; that no petition will be made for said adoption until that date by him; and that there will be no hindrance imposed by the said JoAnne Hiller Todd or Thomas Todd on the appellants' normal privilege as uncle and aunt to visit said children; but that there

is and will be a reciprocal responsibility on the part of appellants to recognize that JoAnne Hiller Todd has the sole responsibility for and the undivided right of care, custody, and control of her children and that the appellants must not be presumptuous or unreasonable in insisting on visitation at any time or under any circumstances nor interfere with the mother's authority over said children. As modified, said order is affirmed.

Based upon the record and the report of the referee, we feel impelled to conclude that it will be for the best interests of the child that the uncle, Wray Hiller, Jr., and his wife have the care and custody of John Bradley Hiller. The order of the court below as to the custody of John Bradley Hiller is therefore reversed.