### MINNESOTA BOARD OF CHIROPRACTIC EXAMINERS, Respondent,

v.

**Curtis L. CICH, D.C., et al., Appellants.**

No. A10–354.

Court of Appeals of Minnesota.

Sept. 14, 2010.

Lori Swanson, Attorney General, Jan M. Haapala, Assistant Attorney General, St. Paul, MN, for respondent.

William L. Davidson, Thomas D. Jensen, Peter L. Gregory, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for appellants.

Considered and decided by
HALBROOKS, Presiding Judge;
STONEBURNER, Judge; and
STAUBER, Judge.

## OPINION

HALBROOKS, Judge.

Appellants Curtis L. Cich, D.C., and Cich Chiropractic, P.A., challenge the district court's grant of summary judgment to respondent Minnesota Board of Chiropractic Examiners (the board). Because we conclude that the district court erred by enjoining Cich from the practice of chiropractic for a period of time beyond the board's original suspension order, we reverse in part. But because we conclude that the district court properly held that the election by Cich Chiropractic, P.A. to furnish chiropractic services was automatically rescinded 90 days after Cich was suspended from the practice of chiropractic, we also affirm in part.

## FACTS

On March 27, 2008, the board suspended Cich's license to practice chiropractic for a period of two years. The board's order also prohibited Cich from advertising or using the terms "Doctor of Chiropractic," "Chiropractor," "D.C.," or any other title that would lead the public to believe that he was engaged in the practice of chiropractic and from maintaining an ownership interest in a firm that engaged in the practice of chiropractic. Cich's license was to be reinstated two years after the date of the board's order, subject to certain conditions. Cich's suspension was affirmed by this court. *In re Chiropractic License of Curtis L. Cich,* No. A08-0596, 2008 WL 4909757 (Minn.App. Nov. 18, 2008), *review denied* (Minn. Feb. 17, 2009).

In April 2009, the board filed a complaint seeking the involuntary dissolution of Cich Chiropractic, P.A. (the firm), an order requiring Cich to comply with the board's 2008 suspension order, and any "further and other relief as the Court deems just and proper." The complaint alleged that Cich violated the Minnesota Professional Firms Act (MPFA) by owning an interest in the firm after his disqualification, that Cich and the firm violated the corporate-practice-of-healing doctrine by practicing chiropractic in a professional association when its sole owner (Cich) was not licensed, and that Cich violated the

board's 2008 order and the Minnesota Chiropractic Act by advertising his chiropractic services and by continuing to have an ownership interest in the firm.

After some discovery, the board moved for summary judgment, arguing that it was entitled to an injunction prohibiting Cich from practicing chiropractic "until such time that he has complied with the Order for a period of two years" and that the district court should find that the firm's election to provide chiropractic services was automatically rescinded and dissolve the firm according to the MPFA, Minn.Stat. § 319B.11, subd. 8. In support of its motion, the board submitted a Google cache of the firm's website dated August 5, 2009, that included background information on "Dr. Curtis L. Cich," an advertisement in the phonebook for the firm and "Dr. Curtis L. Cich" that had been printed after the 2008 order, and correspondence from Cich using "Cich Chiropractic" letterhead and the signature "Dr. Curtis L. Cich, D.C."

The board also provided affidavits from Teresa Marshall, D.C., and Mark Bukowski, an investigator for the attorney general's office. Marshall stated that she saw a large canopy with the name "Cich Chiropractic" at the Lumberjack Days Festival in Stillwater on July 27, 2008. She also stated that she saw a sign inside the booth that said "Cich Chiropractic Free Massage Today" and a table with various chiropractors' business cards displayed, including Cich's business cards. Bukowski stated that on October 30, 2008, he went to the firm's office to serve a subpoena and observed the following: a sign that said "Cich Chiropractic" above the clinic, signs on two exterior doors that stated "Dr. Curtis L. Cich & Associates," a sign above

one door that said "Chiropractor," Cich's business cards in a display, Cich's chiropractic license and diploma hanging on the wall, and additional correspondence to a patient signed "Curtis L. Cich, D.C."

In addition, the board relied on Cich's deposition testimony to support its motion. Cich testified that he sold his interest to another chiropractor on August 30, 2009,[1] and that other chiropractors had been employed at the firm continuously since the 2008 order. In fact, the firm saw approximately 180 patients per week after Cich was suspended in 2008. But Cich testified that he had no role in the operation of the clinic after he was suspended. He also addressed the advertisements, testifying that he signed his annual advertising contract with the phone company prior to his suspension, and it was a 12–month contract. The company required a 30–day cancellation notice; otherwise, the contract renewed automatically. Because Cich did not comply with the cancellation-notice requirement, his advertising contract was renewed after his suspension. Regarding the websites, Cich testified that he asked the company that maintained his website to take it down after the Minnesota Supreme Court declined to review his suspension, but it took the company several months to do so.

The district court granted summary judgment to the board. According to the district court, the only issues were "whether Cich has complied with his suspension since March 27, 2008," and whether it should "intervene and begin a two year period of suspension anew." The district court determined that the firm's election to provide chiropractic services was automatically rescinded 90 days after Cich's sus-

---

**1.** There appears to be some dispute as to the date Cich sold the firm, but the dispute is immaterial to the issues on appeal.

pension pursuant to the MPFA due to his failure to transfer his interest in the firm to a licensed chiropractor. The district court also found that Cich advertised chiropractic services and "held himself as authorized to practice chiropractic in Minnesota," in violation of the 2008 order. Therefore, the district court granted the board's request to enjoin Cich from "practicing chiropractic without a license, violating the corporate practice of healing doctrine, advertising chiropractic services, [and] holding himself out as a chiropractor when not authorized to practice for a period of two years commencing December 16, 2009." Appellants requested leave to move for reconsideration, which the district court denied. This appeal follows.

### ISSUES

I. Did the district court exceed its authority by enjoining Cich from practicing chiropractic beyond the time frame determined by the board?

II. Did the district court err by concluding that the firm's election to provide chiropractic services had been rescinded by operation of law pursuant to the MPFA?

### ANALYSIS

On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the district court erred in its application of law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). Both inquiries are questions of law, which we review de novo. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002).

### I.

 Appellants argue that the district court lacks subject-matter jurisdiction to enjoin Cich from practicing chiropractic for a period of time beyond the date set by the board. Subject-matter jurisdiction is defined as the court's "authority to hear and determine a particular class of actions" and "the particular questions the court assumes to decide." *Anderson v. Cnty. of Lyon*, 784 N.W.2d 77, 80 (Minn. App.2010) (quotation omitted). While appellants frame this issue in terms of the district court's jurisdiction, their argument relates to the statutory authority of the district court to order certain relief under the statute as opposed to its authority to hear the board's motion in general. Therefore, we treat the matter as one of statutory analysis.

 The district court relied on Minn. Stat. § 214.11 as its authority for enjoining Cich's practice. Statutory construction is a legal issue, which we review de novo. *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 122 (Minn.2007). When construing statutes, we attempt "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). "We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee*, 741 N.W.2d at 123.

An individual must be licensed by the board in order to practice chiropractic in the state. Minn.Stat. § 148.06, subd. 1 (2008). The board

> may refuse to grant, or may revoke, suspend, condition, limit, restrict or qualify a license to practice chiropractic, or may cause the name of a person licensed to be removed from the records in the office of the court administrator of the district court for: . . . [t]he violation of, or failure to comply with, the provisions of sections 148.01 to 148.105, the rules of the [board], or a lawful order of the board.

Minn.Stat. § 148.10, subd. 1(a) (2008). And "a licensing board may in its own name bring an action in district court for injunctive relief to restrain any unauthorized practice or violation or threatened violation of any statute or rule which the board is empowered to regulate or enforce." Minn.Stat. § 214.11. The board's complaint requested relief in the form of an order requiring Cich to comply with the March 2008 suspension order and the involuntary dissolution of the firm. It was not until the summary-judgment motion that the board requested an injunction pursuant to section 214.11.

The language of section 214.11 is restrictive. Under this section, the board may obtain injunctive relief in district court only to restrain actual or threatened unauthorized practice or violations of a statute or rule. Any matter related to the licensing of chiropractors is governed by Minn. Stat. § 148.10 (2008). And "[i]njunctive relief granted pursuant to [section 214.11] shall not relieve a person enjoined from ... disciplinary action by the board in respect to the person's license." *Id.* After March 27, 2010, Cich's practice of chiropractic would no longer be in violation of the board's 2008 order. Nor would Cich be violating any statutes or rules that the board is permitted to regulate or enforce. Therefore, the board was authorized under the language of section 214.11 to enjoin Cich from any conduct prohibited by the 2008 order until March 27, 2010.

But the district court granted the board's injunction and enjoined Cich from the practice of chiropractic for a period of two years from the date of its order. Under the district court's order, Cich is prohibited from practicing chiropractic until December 16, 2011, a full 21 months after he is entitled to have his license reinstated. The district court's injunction exceeded the scope of Minn.Stat. § 214.11, by enjoining

Cich from the authorized practice of chiropractic from March 27, 2010 through December 16, 2011. Indeed, the district court acknowledged as much by stating that the effect of its injunction was to "begin a two year period of suspension anew." The district court's injunction, by its own terms, extends the board's original suspension due to Cich's alleged failure to comply with the terms of that order. But according to section 148.10, only the board may suspend a chiropractor's license for his or her failure to comply with an order. Section 214.11 does not permit the district court to act as the board in matters related to the suspension of a chiropractor's license. Therefore, we conclude that the district court exceeded its authority in doing so.

■ The board's argument that the corporate-practice-of-healing doctrine authorized the district court to grant an injunction fails for the same reason. This doctrine prohibits the corporate practice of health care. *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 703 N.W.2d 513, 522 (Minn.2005). But the MPFA provides an exception to this doctrine and permits the formation of professional corporations to practice chiropractic, provided all ownership interests are held by licensed professionals. *Id.* at 518 (citing Minn.Stat. §§ 319B.02, .03, .07 (2004)). Thus, if a professional corporation practicing chiropractic is not wholly owned by a licensed professional, it would be in violation of the prohibition on the corporate practice of health care. But any violation of the corporate-practice-of-healing doctrine by Cich would have occurred only during the time frame defined in the 2008 order. Once Cich's license was reinstated, he was authorized to practice chiropractic again subject to the board's conditions.

Because we conclude that the district court acted beyond its authority by ex-

tending Cich's suspension for a period of time beyond March 27, 2010, we reverse in part. We therefore do not reach the issue of whether the record supports the district court's determination that Cich's conduct violated the board's 2008 order. That matter is left to the board's authority, should it choose to proceed.

## II.

■ Appellants contend that the district court erred by finding that Cich's firm's election to provide chiropractic services was automatically rescinded pursuant to the MPFA.[2] If an owner of a professional firm becomes disqualified to practice "all the pertinent professional services," the owner must divest all of his interest in the firm within 90 days or the firm's election to provide professional services is automatically rescinded. Minn.Stat. § 319B.08, subd. 1(a). There is no dispute that Cich was disqualified from the practice of chiropractic when he was suspended by the board in March 2008. See Minn.Stat. § 319B.02, subd. 4 (defining disqualified as having one's license to provide pertinent professional services suspended). There is also no dispute that Cich failed to transfer his interest in the firm to a licensed chiropractor within the 90–day period, as he previously testified that he sold his interest in the firm on August 30, 2009, which is more than five months after the date of the order. But appellants argue that the professional services listed in Minn.Stat. § 319B.02, subd. 19, include acupuncture by incorporation and that, regardless of whether Cich performed any acupuncture services after the suspension order, Cich was still authorized to practice acupuncture. Thus, appellants contend that the

firm's election was not automatically rescinded.

■ We first address the issue of whether acupuncture is considered a pertinent professional service by the MPFA. "Pertinent professional services" is defined as "the category or categories of professional services specified by the firm in its election under section 319B.03, subdivision 2." *Id.*, subd. 16. "Professional services" are defined as "services of the type required or permitted to be furnished by a professional under a license, registration, or certificate issued by the state of Minnesota to practice … chiropractic under sections 148.01 to 148.105." *Id.*, subd. 19. "Pertinent professional services" refer to those specified in the firm's election under Minn.Stat. § 319B.03, subd. 2, which states that in order to elect professional services, the firm must "specify from the list stated in section 319B.02, subdivision 19, the category or categories of professional services the Minnesota firm is authorized to provide." The list referred to is the entire definition of "professional services," which includes chiropractic. *Id.* The list does not include acupuncture. *Id.*

We are not persuaded that acupuncture is considered a pertinent professional service for purposes of the MPFA. Minnesota courts have relied on the canon of statutory construction "expressio unius est exclusio alterius," meaning that the expression of one thing is the exclusion of another. *See In re Welfare of J.B.*, 782 N.W.2d 535, 543 (Minn.2010) (applying this canon to the statute authorizing the appointment of public defenders); *State v. Williams*, 771 N.W.2d 514, 523 (Minn.2009) (applying this canon to the sentencing guidelines); *Nelson v. Productive Alts., Inc.*, 715 N.W.2d 452, 457

**2.** At oral argument, appellants asserted that this issue would be moot if we concluded that the district court acted without authority in

enjoining Cich from the practice of chiropractic. But we conclude that this matter is properly before us.

(Minn.2006) (applying this canon to an entire chapter of statutes). The definition of "professional services" is an exhaustive list. The statutory language specifically limits "professional services" to those listed, and acupuncture is not included in the list. *See* Minn.Stat. § 319B.02, subd. 19. By application of the canons of statutory construction, because acupuncture is not included in this list, we conclude that acupuncture is not a "professional service" and that it cannot be elected by the firm as a "pertinent professional service" under section 319B.02, subdivision 16. Because Cich was disqualified from practicing chiropractic and chiropractic constituted the entirety of the firm's elected professional services, Cich was disqualified from practicing all pertinent professional services. The district court therefore correctly determined that the firm's election to provide chiropractic was rescinded by operation of law.

At oral argument, appellants contended that the inclusion of the word "certificate" in the definition of "professional services" demonstrates that acupuncture certificates were contemplated by the legislature. We are not persuaded by this argument. The definition of "professional services" includes the services of "architecture, engineering, surveying, landscape architecture, geoscience, and certified interior design" under Minn.Stat. § 326.02–.15 (2008), and accountancy under chapter 326A.

These sections authorize the practice of the profession if the individual first obtains a license *or a certificate*. Minn.Stat. §§ 326.10, subd. 1(a), 326A.03, subd. 1 (2008). The legislature more likely included the phrase "certificate" to refer to these expressly mentioned services and not as an attempt to include an acupuncture certificate obtained as derivative of one's chiropractic license. We therefore conclude

that the district court correctly determined that the firm's election to provide chiropractic was automatically rescinded by operation of law 90 days after Cich's suspension.

## DECISION

Because the district court exceeded its authority under Minn.Stat. § 214.11 by enjoining Cich from the practice of chiropractic for a period of time beyond the board's original suspension order, the district court's injunctive order beyond March 27, 2010, is invalid. But because acupuncture is not a "pertinent professional service" for purposes of the MPFA, the district court did not err by finding that the firm's election to provide chiropractic services was automatically rescinded 90 days after Cich's 2008 suspension.

**Affirmed in part and reversed in part.**