In re the Matter of Kelli ROH-MILLER, et al., petitioners, Respondents,

v.

Andrew HART, Appellant,

and

Jennifer Joseph, Guardian ad Litem.

No. A10–1348.

Court of Appeals of Minnesota.

April 19, 2011.

Debra Julius, Julius Law Office Ltd., Prior Lake, MN, for respondents.

Glenn P. Bruder, Mitchell, Bruder & Johnson, Bloomington, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; ROSS, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

Respondents, the maternal grandfather and aunt of a minor child whose mother had died, successfully petitioned the district court for visitation rights to the child. Appellant, the child's father, challenges the amount of visitation time granted to the grandfather and the granting of any visitation to the aunt. Because the district court did not abuse its discretion in determining the amount of the grandfather's visitation time, we affirm in part; because neither statutory nor common law confers on the district court the power to grant visitation rights to the aunt, we reverse in part and remand for a visitation order consistent with this opinion. We also grant respondents' motion to strike from appellant's brief a document that was not part of the record before the district court.

## FACTS

B.H., the daughter of appellant Andrew Hart and the late Katie Rohmiller, was born in July 2003. B.H. lived with both her parents in Minnesota until June 2004, when appellant was removed from the home after an incident that resulted in his pleading guilty to malicious punishment of a child. He had no contact with B.H. during the next 18 months.

Katie Rohmiller took B.H. to Iowa, where they lived with Katie Rohmiller's aunt (B.H.'s great-aunt) until August 2005, when the mother was killed in a car accident. The mother's aunt sought custody, and B.H. continued to live in her home in Iowa until August 2008, when appellant was granted custody and moved with B.H. to the Twin Cities area of Minnesota.

It is undisputed that B.H. is thriving with appellant. At the request of the guardian ad litem (GAL) appointed in connection with this matter, a forensic psy-

chologist evaluated appellant. His evaluation concluded:

> I am thoroughly impressed with [appellant] as a man who has engaged in very thoughtful, intensive self-examination. He is an intelligent man, and he was truthful and not defensive about his history of physically abusing his child.... [H]e was direct about what his personal flaws were and how he has been able to rectify them with anger-management therapy. I believe he is sincere in this transformation, and he has become a dedicated child-centered parent.... [T]here is no risk whatsoever [as] to his psychological abilities to continue to be a competent and caring father.

Appellant has not permitted B.H. to have contact with her mother's identical twin sister, respondent Kelli Rohmiller, who also lives in the Twin Cities area and with whom B.H. had had a relationship throughout her life. In December 2008, Kelli Rohmiller and her father, B.H.'s maternal grandfather, respondent Clayton Rohmiller, an Iowa dairy farmer, filed a complaint in a Minnesota district court seeking visitation rights.

The GAL interviewed appellant, Kelli Rohmiller, and B.H., and spoke with Clayton Rohmiller by phone. The GAL's "best interest recommendations on behalf of [B.H.]" were that B.H. "have consistent contact with the Rohmiller family. If possible this should be facilitated through Kelli Rohmiller, with whom [B.H.] shares a close bond" and that B.H. "have one four-hour visit per month with the Rohmillers" until July 2010, then "one weekend visit per month with the Rohmillers" and "one week of [summer] vacation time with the Rohmillers."

In June 2010, the district court issued a judgment granting the Rohmillers one phone call each per week, unsupervised joint visitation of one weekend per month, one week during the summer months, one day between December 28 and December 30, and one day prior to Easter. The judgment also provided that it was not necessary for both Rohmillers to be present for visitation and that Kelli Rohmiller could "exercise visitation without the presence of the grandfather, Clayton Rohmiller."

## ISSUES[1]

■ 1. Did the district court abuse its discretion in setting the amount of visitation time?

2. Does Minn.Stat. § 257C.08, subd. 1 permit granting visitation to a relative of the deceased parent of an unmarried minor child other than the deceased parent's parents and grandparents?

3. Does a Minnesota district court have authority to grant visitation to a relative of the deceased parent of an unmarried minor child other than the deceased parent's parents and grandparents?

---

1. We also address respondents' motion to strike from the appendix to appellant's brief a copy of Kelli Rohmiller's application to intervene in the Iowa custody proceeding because the application was not presented to the district court. *See* Minn. R. Civ.App. 110.01 (restricting the record to documents actually provided to the district court); *see also Thiele v. Stich,* 425 N.W.2d 580, 582–83 (Minn.1988) (holding that appellate court does not base its decision on matters outside the record or consider anything not presented to and considered by the district court). While appellant claims that the parties agreed the district court could take judicial notice of the Iowa custody proceeding, the application does not appear to have been presented to the district court and is therefore not part of the record on appeal. The motion to strike is granted.

## ANALYSIS

### 1. Amount of visitation time granted to Clayton Rohmiller

■ A district court has broad discretion to determine visitation issues. *Olson v. Olson,* 534 N.W.2d 547, 550 (Minn.1995).

■ Appellant concedes that Clayton Rohmiller may be granted visitation under Minn.Stat. § 257C.08, subd. 1:

> If a parent of an unmarried minor child is deceased, the parents and grandparents of the deceased parent may be granted reasonable visitation rights to the unmarried minor child during minority by the district court upon finding that visitation rights would be in the best interests of the child and would not interfere with the parent child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.

Appellant relies on the last sentence of this subdivision to argue that one weekend per month is excessive because B.H. saw Clayton Rohmiller only about eight hours per month prior to her mother's death in August 2005. But B.H. was only 25 months old when her mother died; the amount of visitation appropriate for a one-year-old or two-year-old child and her grandfather may differ from that appropriate for a seven-year-old child and her grandfather.

Appellant has not shown that the district court abused its discretion in awarding visitation comparable to the visitation recommended by the guardian ad litem rather than comparable to the visitation that occurred prior to August 2005. On this record, we are not prepared to say the amount of visitation granted was an abuse of discretion.

### 2. Application of Minn.Stat. § 257C.08

■ "The application of statutes ... to undisputed facts is a legal conclusion and is reviewed de novo." *City of Morris v. Sax Invs., Inc.,* 749 N.W.2d 1, 5 (Minn. 2008). It is undisputed that respondent Kelli Rohmiller is the sister of B.H.'s deceased mother.

Visitation may be granted to parents and grandparents of a deceased parent "by the district court upon finding that visitation rights would be in the best interests of the child." Minn.Stat. § 257C.08, subd. 1. Based on testimony at the hearing and the recommendation of the guardian ad litem, the district court made exhaustive findings to support the finding that it would be in the best interests of B.H. to have visitation with both Clayton and Kelli Rohmiller. The evidence supports that finding.

■ But, although Minn.Stat. § 257C.08, subd. 2, (2010), grants visitation to parents and grandparents of parties in all family court proceedings; Minn.Stat. § 257C.08, subd. 3 (2010) grants visitation to grandparents or great-grandparents with whom a child has resided for 12 months or more; and Minn.Stat. § 257C.08, subd. 4 (2010) grants visitation to any persons with whom a child has resided for two years or more,[2] Minn.Stat. § 257C.08 does not specifically provide for granting visitation to a sibling of deceased parents unless the child resided with the sibling for at least two years. *See* Minn. Stat. § 257C.08, subd. 4. "If the legislature fails to address a particular topic, our rules of construction forbid adding words or meaning to a statute that are purposely

---

**2.** All visitation is granted "upon finding that visitation rights would be in the best interests of the child." Minn.Stat. § 257C.08, subd. 1.

omitted or inadvertently overlooked." *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 760 (Minn.2010) (quotation omitted).

Moreover, a legitimate inference from the legislature's specification of those to whom visitation may be granted is that visitation may not be granted to those not specified. "Minnesota courts have relied on the canon of statutory construction 'expressio unius est exclusio alterius,' meaning that the expression of one thing is the exclusion of another." *Minn. Bd. of Chiropractic Exam'rs v. Cich,* 788 N.W.2d 515, 521 (Minn.App.2010) (applying canon to statutory list of professional services and citing *In re Welfare of J.B.,* 782 N.W.2d 535, 543 (Minn.2010) (applying canon to statute on appointment of public defenders); *State v. Williams,* 771 N.W.2d 514, 523 (Minn.2009) (applying canon to sentencing guidelines); *Nelson v. Productive Alts., Inc.,* 715 N.W.2d 452, 457 (Minn. 2006) (applying canon to entire chapter of statutes)).

For its construction of the statute, the district court relied on *In re Custody of D.M.M.,* 137 Wis.2d 375, 404 N.W.2d 530, 536–37 (1987) (construing Wisconsin's grandparent-visitation statute not to prohibit granting visitation to an aunt who had been the child's court-ordered guardian for almost six of her ten years). As a threshold matter, we note that the case would not arise in Minnesota, because, under Minn.Stat. § 257C.08, subd. 4 (granting visitation to other persons with whom the child has resided for two years or more), an aunt with whom a child had lived for over six years would have had a statutory right to visitation. In any event, as a Wisconsin case, *D.M.M.* is not dispositive, and we do not find it persuasive because it is distinguishable on both the facts and the law.

As to the facts, Kelli Rohmiller was never the court-appointed guardian of B.H. and never stood in loco parentis to her. As to the law, the Wisconsin court first considered the statute granting visitation to parents and asked whether "reasonably well-informed individuals would find a person who, under court order, raised a child for almost six years to be a 'parent' under the statute." *Id.* at 534. It concluded that parent could be defined as someone standing in loco parentis and that the aunt "was standing in loco parentis for several years" and "[h]er requests for visitation came while she still stood in loco parentis." *Id.* at 535. But, because "the statute might have been intended simply to mean natural parent," *id.,* the court examined its legislative history and found that the original version was based on two cases, *"Weichman* [*v. Weichman,* 50 Wis.2d 731, 184 N.W.2d 882 (1971) ] and *Ponsford* [*v. Crute,* 56 Wis.2d 407, 202 N.W.2d 5 (1972), that] discussed the rights for visitation by grandparents and 'other parties.' " *Id.* Based on these cases, the court concluded that "[t]he legislature did not intend to supplant the common law that allowed other persons to petition for visitation, but intended that grandparents and great-grandparents be provided with a uniform right to petition [for visitation]." *Id.* at 537. The Minnesota grandparent visitation statute does not appear to have a basis in cases permitting visitation to grandparents and "other parties."

Construing Minn.Stat. § 257C.08 to permit a district court to grant visitation to a deceased parent's sibling who had not resided with the child for at least two years, *see* Minn.Stat. § 257C.08, subd. 4, when the court finds it is in the child's best interest would both add words to the statute in violation of *Premier Bank,* 785 N.W.2d at 760, and violate the canon expressio unius est exclusio alterius as set out in *Cich,* 788 N.W.2d at 521. Such a

construction is beyond our authority. *See* Minn.Stat. § 645.16 (2010) ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.").

### 3. Lack of common law support

The district court also based its grant of visitation to Kelli Rohmiller on Minnesota caselaw. It relied on *SooHoo v. Johnson*, 731 N.W.2d 815, 822 (Minn.2007) (holding that "a state, in its role as parens patriae, has a compelling interest in promoting relationships among those in recognized family units ... in order to protect the general welfare of children"); *Olson*, 534 N.W.2d at 549 (holding that "in all matters involving court-established family relationships of children, [courts] begin with reference to [their] paramount commitment to the best interests of the children"); and *Price v. Sheppard*, 307 Minn. 250, 258–59, 239 N.W.2d 905, 911 (1976) (holding that "[t]he state's interest in assuming the decision [of whether an involuntarily committed individual undergoes psychiatric treatment] is in acting as parens patriae, fulfilling its duty to protect the well-being of its citizens who are incapable of so acting for themselves") to conclude that a court has not merely the right but the obligation to authorize what is in the best interest of a child too young to act for herself.

But a court's right and obligation to make decisions based on children's best interests must be balanced against "[the parents'] fundamental right to the care, custody, and control of their children that should not be interfered with except for grave and weighty reasons." *SooHoo*, 731 N.W.2d at 823 (quotations omitted). "The parent's fundamental right to the care, custody, and control of his or her child carries with it the presumption that the parent is acting in the best interest of the child and requires deference to the parent's wishes." *Id.* at 824 (citing *Troxel v. Granville*, 530 U.S. 57, 70, 120 S.Ct. 2054, 2062, 147 L.Ed.2d 49 (2000)).

Just as a finding that visitation would be in a child's best interests does not justify adding to a statute's language, it does not justify superseding the parent's wish. "[O]ne of the dangers of utilizing a best-interest analysis is the potential for a court to make the decision based entirely on the court's subjective estimation without regard to the fit parent's wishes." *Id.* at 823 (citing *Troxel*, 530 U.S. at 67, 120 S.Ct. at 2061 (condemning situation in which, "[s]hould the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails")).

Finally, the district court relied on a case that pre-dated the grandparent visitation statute, *State ex rel. Burris v. Hiller*, 258 Minn. 491, 501–02, 104 N.W.2d 851, 858 (1960) to conclude that Minnesota recognizes the "normal privilege" of an aunt and uncle to visit children. But the quoted language in *Burris* concerned two girls whose parents were divorced and whose father had custody. *Id.* at 492, 104 N.W.2d at 853. The father remarried and had a son with his second wife. *Id.* at 493, 104 N.W.2d at 853. After the father and his second wife were killed in a car accident, all three children went to live with the father's brother, who was their uncle, and his wife. *Id.* at 493, 104 N.W.2d at 853. Seven months later, pursuant to a stipulation, the girls' custody was awarded to their mother, who was legally entitled to it. *Id.*, 104 N.W.2d at 853. The stipulation provided that the mother would not impose any hindrance on the "normal privilege" of the uncle and aunt with whom the girls had lived to visit the girls and have

the girls visit them. *Id.*, 104 N.W.2d at 853. But the stipulation also provided that the uncle and aunt had a

> reciprocal responsibility ... to recognize that [the girls' mother] has the sole responsibility for, and the undivided right of care, custody and control of her children ... and [the aunt and uncle] must not be presumptuous or unreasonable in insisting on a visit at any time or under any circumstances nor interfere with their mother's authority over them.

*Id.*, 104 N.W.2d at 853-54. *Burris* is distinguishable on several grounds, but chiefly because the visitation of the aunt and uncle with whom the girls had lived was stipulated to by the custodial parent. Here, there is no stipulation, and nothing in *Burris* would support granting visitation to an aunt and uncle over the objection of the custodial parent.

Like statutory law, Minnesota caselaw does not confer on courts the right to grant visitation to the sibling of a deceased parent, and "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987) *review denied* (Minn. Dec. 18, 1987).

### DECISION

Because the granting of grandparent visitation time in an amount consistent with the recommendation of the guardian ad litem was not an abuse of discretion, we affirm it; because neither statutory law nor caselaw provides a district court with the authority to grant visitation to the sibling of a deceased parent, we reverse the grant of that visitation and remand for a judgment ordering visitation consistent with this opinion. Respondents' motion to strike is granted.

**Affirmed in part, reversed in part, and remanded; motion granted.**

LANSING, Judge (concurring specially).

In a comprehensive and careful order determining visitation for five-year-old BH, the district court found that, in light of likely emotional harm to the child if she is unable to see her deceased mother's family, reasonable contact should be provided between BH and her grandfather, Clayton Rohmiller and also between BH and her maternal aunt, Kelli Rohmiller, who is the deceased mother's twin sister. The district court recognized that this young child has experienced significant loss in her short life. She was ten months old at the time of an incident that resulted in her father pleading guilty to malicious punishment. Following her father's guilty plea, she had no contact with him for more than eighteen months. She was only two years old when her mother died in a car accident. For the next three years she lived with her mother's maternal aunt whom she no longer sees. The district court found that BH has had a primary relationship with her mother's twin sister Kelli Rohmiller throughout BH's young life and the absence of this relationship with her maternal aunt would cause emotional damage.

I concur in the majority's determination that the district court acted within its discretion by granting Clayton Rohmiller visitation with his granddaughter BH and that the time and amount of visitation is reasonable. I also agree that Minn.Stat. § 257C.08 (2010) does not specifically confer on the court the power to grant visitation to a maternal aunt on the death of a child's mother. I write separately, however, because I believe that, if section 257C.08 is read to eliminate any residual authority for the district court to provide visitation under these circumstances, it may be appropriate for the legislature to reconsider the provisions of Minn.Stat.

§ 257C.08 and allow limited discretion for the district court to extend visitation in unusual circumstances such as those in this case.

The United States Supreme Court has recognized that "the interest of parents in the care, custody, and control of their children" is a "fundamental liberty interest[ ]." *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). Minnesota has applied this holding by similarly stating that "a parent's right to make decisions [on] the care, custody, and control of [the parent's] children is a protected fundamental right" under the Due Process Clause of the Fourteenth Amendment. *SooHoo v. Johnson,* 731 N.W.2d 815, 820 (Minn.2007). But Minnesota has also recognized that this right is not absolute and that "states may intrude on parental rights in order to protect the general interest in the youth's well being." *Id.* at 822 (quotation omitted).

The district court made specific findings on BH's best interests, on the emotional ties between BH and her aunt, and that the visitation rights would not interfere with the relationship between BH's father, her custodial parent, and BH. To reduce the time away from BH's home, the district court provided that the visitation would be jointly exercised with BH's grandfather and maternal aunt, but that it would not be necessary that both be present for the visitation to take place. This provision took into account that BH's grandfather, who is a farmer in Iowa, may not be able to visit BH as regularly as her aunt who resides in Minnesota. On these facts, the district court's order provides a compelling basis for a re-examination of Minn.Stat. § 257C.08.